UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH GARBARINI,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>WAYNE ULIT, et al.,<br><br>　　　　Defendants. | Case No.: 1:14-cv-01058-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS<br><br>[ECF No. 14] |

　　　　Plaintiff Ralph Garbarini is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

　　　　On February 10, 2015, Defendants filed a motion to dismiss for failure to state a cognizable claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff filed an opposition on April 13, 2015, and Defendants filed a reply on April 20, 2015.

　　　　On May 6, 2015, the Court heard oral argument from both parties on Defendants' motion to dismiss. Deputy Attorney General, Erin Doering, appeared on behalf of Defendants, and Plaintiff appeared pro per.

**I.**

**DISCUSSION**

**A.　　Motion to Dismiss Standard Under Rule 12(b)(6)**

　　　　A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim,

1

and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). However, the Court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party, Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit, pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

### B. Allegations of Complaint

In July 2012, while housed at Corcoran State Prison, Plaintiff suffered severe chronic pain in his right shoulder caused by a tendon tear in his right rotator cuff. Plaintiff's medical condition significantly affects his daily activities causing severe pain throughout the day that also limited his sleep at night to three to four hours per night.

Plaintiff sought surgery to repair his rotator cuff and was seen by Defendant Doctor Wayne Ulit, Plaintiff's acting primary care physician (PCP) on July 19, 2012. Dr. Ulit ordered surgery

1 consultation to determine if surgery was necessary to repair Plaintiff's right rotator cuff.

2 On September 5, 2012, Plaintiff received a telemedicine consultation at Corcoran State Prison Hospital from orthopedic surgeon Chanrasekaran (hereinafter Dr. Chandra). The impression from the consultation upgraded Plaintiff's tendon tear from a partial tear to a full thickness tear which was consistent with the increased pain Plaintiff was suffering. Dr. Chandra recommended surgery.

Plaintiff was seen by Physician's Assistant, C. Sisodia on September 28, 2012. On October 18, 2012, Plaintiff saw PCP Ulit where he was informed that surgery was denied. Due to Plaintiff's serious medical need his pain medication was continued.

On September 30, 2012, Plaintiff filed a health care appeal requesting surgery be performed on his right rotator cuff as recommended by Dr. Chandra on September 5, 2012.

On November 23, 2012, Plaintiff experienced a massive tendon rupture in his right rotator cuff causing him excruciating chronic pain. Plaintiff used the CDC 7362 Health Care Services Request Form to notify medical staff of his serious medical need and to again request the recommended surgery.

Plaintiff underwent open surgery to repair his right rotator cuff on December 13, 2012, at San Joaquin Community Hospital. The surgery was performed by Dr. Chandra who noted the rotator cuff damage involved three tendons.

On January 29, 2013, Plaintiff experienced excruciating pain accompanied by a loud popping sound from his right shoulder while sitting in his cell. Plaintiff's rotator cuff had re-ruptured causing Plaintiff excruciating pain. Visible deformities and extremely limited range of motion in his right shoulder were present.

Plaintiff's serious shoulder injury significantly affects his daily activities beginning with getting out of his bunk in the morning, trying to shave, putting on his pants, shirts and shoes. Folding a blanket is a major one armed task for Plaintiff. Plaintiff's severe chronic pain limits his sleep to three to four hours per night. Plaintiff's pain also causes his chronic back pain to increase in severity. Due to Plaintiff's serious medical needs, Defendant PCP Ulit continued to prescribe pain medication to treat his pain.

Plaintiff's constant physical pain causes him mental anguish and emotional distress making

1  him feel depressed, hopeless, anxious and very irritable.  Plaintiff's ability to concentrate has
2  diminished to the point that reading, studying, drawing and other activities he used to perform with
3  ease are now fragmented and inconsistent efforts.
4        Plaintiff received a surgery consultation by Defendant Dr. David Gail Smith on March 1, 2013.
5  Dr. Smith ordered an MRI scan of Plaintiff's right shoulder.
6        Plaintiff received a second surgery consultation by Dr. Smith on June 5, 2013.  Based on the
7  MRI scan and objective findings, Dr. Smith confirmed that Plaintiff had re-ruptured his right rotator
8  cuff suffering a full thickness tendon tear.  Dr. Smith recommended surgery.
9        Plaintiff underwent open surgery to re-repair his right rotator cuff on July 11, 2013.  The
10 surgery was performed by Dr. Smith.
11       Following the Plaintiff's surgery on July 11, 2013, Plaintiff experienced excruciating pain and
12 extremely limited range of motion in his right shoulder to a degree that significantly affects his daily
13 activities and limits his sleep to three to four hours per night.  Plaintiff was convinced that his rotator
14 cuff was not repaired.
15       Due to Plaintiff's serious medical need, PCP Ulit continued to prescribe Plaintiff pain
16 medication.
17       Plaintiff expressed his medical concerns to both Dr. Ulit and Dr. Smith during follow-up visits
18 at Corcoran medical facilities between July 19, 2013 and October 11, 2013.  Both Defendants
19 repeatedly denied Plaintiff's claim that his rotator cuff was not repaired.
20       On July 26, 2013, Plaintiff had a follow-up visit with Dr. Smith at Corcoran Hospital.  Plaintiff
21 told Dr. Smith that his rotator cuff was not repaired due to the severe chronic pain he was experiencing
22 combined with his extremely limited range of motion in his right shoulder.
23       Dr. Smith stated that he had in fact repaired Plaintiff's right rotator cuff and recommended
24 Plaintiff begin physical therapy.
25       Plaintiff stated that due to the severe chronic pain he was suffering in his right shoulder he
26 could not do physical therapy.  Plaintiff also stated that when he participated in physical therapy form
27 the same shoulder in June 2012, the therapy did not more damage than good.
28       Plaintiff stated that he believes the injury he suffered during physical therapy in June 2012,

1  attributed to the subsequent rupture of his rotator cuff on November 22, 2012.

2       Dr. Smith again stated that he had repaired Plaintiff's right rotator cuff.

3       Plaintiff left the follow-up visit suffering severe chronic pain and feeling very depressed due to Dr. Smith's denials.

5       On August 29, 2013, Plaintiff was seen by PCP Ulit. Plaintiff stated that he was experiencing severe chronic pain and extremely limited range of motion in his right rotator cuff insisting the rotator cuff was not repaired during his July 11, 2013, open surgery. Plaintiff stated he feared the recommended physical therapy would cause more damage to his rotator cuff just as it had in June 2012.

10       Due to Plaintiff's serious medical need PCP Ulit continued to prescribe pain medication for Plaintiff's severe chronic pain.

12       Plaintiff wrote a letter to the Prison Law Officer explaining his medical situation and requested assistance in receiving effective treatment for his serious medical needs. The Prison Law Office responded to Plaintiff's request by way of letter with supporting medical documentation. The medical records show that Plaintiff's rotator cuff had a massive tendon tear and it was not repairable. The records further show that Dr. Smith knew of the tendon tear and denied the fact during follow-up visits with Plaintiff. The records also show Dr. Ulit knew or should have known of Plaintiff's massive tendon tear in his right cuff but denied the fact during follow-up visits with Plaintiff.

19       On October 7, 2013, Dr. Ulit stopped prescribing Plaintiff pain medication. The pain medication also treated Plaintiff's progressive severe degenerative disc disease and progressive arthritis in his right knee.

22       Dr. Ulit failed to initiate any alternative treatment for the severe chronic pain Plaintiff was experiencing while having actual knowledge of his serious medical need.

24       On October 11, 2013, Plaintiff was seen by Dr. Smith at Corcoran Hospital. Plaintiff stated that his rotator cuff was not repaired. Dr. Smith responded stating that he had repaired Plaintiff's rotator cuff and that he should begin physical therapy. Plaintiff stated that he could not use his right arm to do simple daily tasks without excruciating pain and would likewise be unable to engage in physical therapy without further injuring his right rotator cuff. Plaintiff requested effective treatment

for his severe chronic pain.

Dr. Smith again insisted that he had repaired Plaintiff's rotator cuff. Dr. Smith refused to treat Plaintiff's severe chronic pain while having actual knowledge of Plaintiff's serious medical needs.

On October 14, 2013, Plaintiff was seen by his newly assigned PCP Jong Moon at Corcoran State Prison. Plaintiff's attempt to explain his medical condition to PCP Moon was met with hostility and indifference as he yelled in an angry tone of voice when speaking with Plaintiff. Dr. Moon yelled "you are getting nothing from me." Dr. Moon refused to treat Plaintiff's pain stating that Plaintiff "cheeked" his medication eighteen months earlier at a different prison.

Plaintiff informed PCP Moon that the single allegations of him "cheeking" his medication was false.

Plaintiff informed PCP Moon that due to his serious medical needs he was treated with pain medication for the prior thirteen months without incident and because of his recent second failed surgery to repair his rotator cuff he was in more pain now than in the past thirteen months.

PCP Moon responded in a loud hostile manner again stating "you are getting nothing from me" and told Plaintiff he would be called back in four weeks. Plaintiff asked Defendant Moon if he was supposed to wait four weeks in severe pain and Moon answered loudly "yes."

Plaintiff left the visit in severe physical pain as well as suffering mental anguish and emotional distress.

Plaintiff filed a Health Care Appeal requesting his pain medication be reinstated to help alleviate his unnecessary physical and mental suffering associated with his severe chronic pain.

Plaintiff's inability to get treatment for his severe chronic pain has led to Plaintiff suffering anxiety, depression, hopelessness, and insomnia making him extremely irritable. Plaintiff is overwhelmed by mental anguish and emotional distress.

Plaintiff sought psychiatric help from Dr. Gharakhanian on October 29, 2013. Based on Plaintiff's mental health condition, Dr. Gharakhanian prescribed Plaintiff antidepressants and medication to help Plaintiff with his insomnia. Plaintiff, out of necessity, continues to take psychotropic medication to this day with marginal results.

Plaintiff was seen by Dr. Moon on November 4, 2013 and November 11, 2013. During both

visits Plaintiff requested effective treatment for his severe chronic pain caused by a tendon tear in his right rotator cuff. Plaintiff told Dr. Moon that his chronic pain had been with him since the failed surgery on July 11, 2013, and the pain had exacerbated his chronic back pain caused by his degenerative disc disease. During both visits, Dr. Moon displayed hostility and indifference toward Plaintiff yelling at him "you will just have to wait for the pain committee." Dr. Moon refused to treat Plaintiff's serious medical need while having knowledge of his serious medical problem.

On November 21, 2013, Plaintiff filed a Health Care Appeal requesting effective medical care for his torn right rotator cuff. In the appeal, Plaintiff provides a summary of the medical treatment he received from medical staff at Corcoran State Prison and contracted surgeon from July 11, 2013 to November 11, 2013.

On December 3, 2013, one hundred and forty days after Plaintiff's failed surgery on July 11, 2013, Doctor Moon informed Plaintiff that his rotator cuff is not repairable. Plaintiff again requested treatment for his severe pain. Dr. Moon answered in an angry tone "you will have to wait for pain committee." Dr. Moon refused to treat Plaintiff's serious medical need while having actual knowledge of his serious medical need.

On January 14, 2014, Dr. Jeffrey Wang approved a pain committee recommendation that failed to provide effective treatment for Plaintiff's severe chronic pain caused by a massive tendon tear in Plaintiff's right rotator cuff. Dr. Wang had actual knowledge of Plaintiff's serious medical need and refused to provide effective treatment for his serious medical need.

### C. Defendants' Motion to Dismiss

#### 1. Screening Pursuant to 28 U.S.C. § 1915A

The Court previously screened Plaintiff's complaint pursuant to screened pursuant to 28 U.S.C. § 1915A, and found it stated a cognizable claim against Defendants Doctors Wayne Ulit, David Gail Smith, Jong Yeoung Moon, and Jeffrey Jeng-Tao Wang for deliberate indifference to a serious medical need in violation of the Eighth Amendment. (ECF No. 7.) Because the screening standard does not differ from the standard governing Rule 12(b)(6) motions, Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012), the Court generally views motions to dismiss for failure to state a claim with disfavor. Unless a motion sets forth new or different grounds not previously considered by the Court,

it is disinclined to rethink what it has already thought.  Sequoia Forestkeeper v. U.S. Forest Service, No. CV F 09-392 LJO JLT, 2011 WL 902120, at *6 (E.D.Cal. Mar. 15, 2011) (citing United States v. Rezzonico, 32 F.Supp.2d 1112, 1116 (D.Ariz.1998)) (quotation marks omitted).  This case presents no exception.

        2.        Deliberate Indifference to Serious Medical Need

At the outset, Defendants' motion does not challenge that Plaintiff has pled sufficient facts to allege a serious medical need.  Rather, Defendants challenge whether Plaintiff has pled facts sufficient to allege that each of them were deliberately indifference to the alleged serious medical need.

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

"A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference."  Snow v. McDaniel, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm v. Rotman, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health."  Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332)

1  (internal quotation marks omitted).  Deliberate indifference may be found if Defendants "deny, delay,
2  or intentionally interfere with [a prisoner's serious need for] medical treatment."  Hallet v. Morgan,
3  296 F.3d 732, 734 (9th Cir. 2002).
4        In order to prevail on a claim involving defendants' choices between alternative courses of
5  treatment, a prisoner must show that the chosen treatment "was medically unacceptable under the
6  circumstances" and was chosen "in conscious disregard of an excessive risk to plaintiff's health."
7  Jackson v. McIntosh, 90 F.3d at 332.  In other words, so long as a defendant decides on a medically
8  acceptable course of treatment, his actions will not be considered deliberately indifferent even if an
9  alternative course of treatment was available.  Id.

      **a.   Defendant Doctor Ulit**

11        Dr. Ulit treated Plaintiff's severe pain caused by the massive tendon tear in his right rotator
12  cuff with pain medication for thirteen months.  However, on October 7, 2014, Dr. Ulit stopped treating
13  Plaintiff's severe chronic pain causing Plaintiff unnecessary and wanton infliction of pain that
14  significant affects his daily activities.

      **b.   Defendant Doctor Smith**

16        During Plaintiff's two follow-up visits with Dr. Smith, following the July 11, 2013, surgery,
17  Plaintiff stated that his rotator cuff was not repaired during the surgery.  Plaintiff also informed Dr.
18  Smith that he was suffering severe chronic pain and extremely limited range of motion in his rotator
19  cuff.  Dr. Smith responded with untruths, insisting he had repaired Plaintiff's rotator cuff,
20  contradicting his own operative notes where he stated Plaintiff suffered a non-repairable massive
21  tendon tear to his rotator cuff.  Dr. Smith repeatedly refused Plaintiff's reasonable requests for
22  effective treatment for his severe pain.

      **c.   Defendant Doctor Moon**

24        While acting as Plaintiff's primary care physician from October 2013 through April 2014,
25  Plaintiff was seen by Dr. Moon on November 4, 2013 and November 11, 2013.  During both visits
26  Plaintiff requested effective treatment for his severe chronic pain caused by a tendon tear in his right
27  rotator cuff.  Plaintiff told Dr. Moon this his chronic pain had been with him since his failed surgery
28  on July 11, 2013, and such pain had exacerbated his chronic back pain caused by his degenerative disc

disease. During both visits, Dr. Moon displayed hostility and indifference toward Plaintiff yelling at him "you will just have to wait for the pain committee." Dr. Moon refused to treat Plaintiff's serious medical need while having knowledge of his serious medical problem. Dr. Moon also refused effective treatment during the December 3, 2013, visit where Dr. Moon informed Plaintiff for the first time that his tendon tear was not repairable.

### d. Defendant Doctor Wang

Dr. Wang repeatedly refused to effectively treat Plaintiff's severe chronic pain when he reviewed, approved and authorized a pain committee recommendation to not provide opioids to Plaintiff.

In his reply to Plaintiff's opposition, Defendant Wang points out that Plaintiff attempts to expand on this claim in his opposition by making reference to the review of two health care appeals. In ruling on a motion to dismiss, the Court is limited to the four corners of the complaint, see Haskell v. Time, Inc., 857 F.Supp. 1392, 1396 (E.D. Cal. 1994), in which Plaintiff alleged that Doctor Wang was deliberately indifferent to his serious medical needs by his review and approval of the pain management committee recommendation of no opioids.

### e. Findings

With respect to the subjective element of Plaintiff's claim of deliberate indifference (the only element at issue in the motion to dismiss), Plaintiff's allegations must be construed liberally and the Court "'may only dismiss a pro se complaint for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Wilhelm v. Rotman, 680 F.3d at 1122 (quoting Silva, 658 F.3d at 1101).

In Defendants' view, the fact that Defendants' provided Plaintiff with the option of physical therapy belies any claim that they were deliberately indifferent to his shoulder injury. The Court is not persuaded by Defendants' argument. The complaint, viewed as a whole and in the light most favorable to Plaintiff, does not allege that there was a difference of opinion between physicians and Plaintiff; rather, it alleges that Defendants chosen treatment of physical therapy and denial of adequate pain medication because of alleged prior cheeking incidents was unreasonable and pretextual and thus evidence of deliberate indifference. Indeed, Plaintiff was prescribed morphine subsequent to the

alleged cheeking incidents, and there is no indication of what treatment, beyond physical therapy, was provided to Plaintiff for his shoulder pain. Although Plaintiff may have received medical evaluations subsequent to his surgery, his claim is that he was denied proper medical attention as was previously provided and a prisoner need not prove that he was completely denied medical care in order to prevail. See Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) ("A prisoner need not prove that he was completely denied medical care. Rather, he can establish deliberate indifference by showing that officials intentionally interfered with his medical treatment.") (citation omitted).

Defendants further claim that Plaintiff's exhibits belie his allegations that Defendants denied the true outcome of his rotator cuff repair surgery. Even with consideration of the additional exhibits attached to Defendants' motion and considered through the "incorporation by reference" doctrine,[1] the Court does not agree with Defendants' interpretation of Plaintiff's claim. Plaintiff's claim is that the July 2013 surgery was not performed successfully by Dr. Smith, despite Defendants' claim that the rotator cuff was repaired and only physical therapy was necessary. Indeed, according to Dr. Smith's operative note, the rotator cuff tear "was a massive tear. I was able to mobilize the cuff somewhat but it was still a very massive tear. … The cuff tear was exposed and was indeed a massive tear. It had re-ruptured. … I was not able to mobilize the cuff adequately enough for any type of repair and this was just a massive tear which was non-repairable." (ECF No. 1, Ex. A12.) It was later recommended that Plaintiff undergo physical therapy, but Plaintiff refused because it was previously harmful and he was in constant pain. Plaintiff's complaint alleges that despite the knowledge that Plaintiff's second surgery was not successful and Plaintiff remained in continuous and constant pain, Defendants failed to address Plaintiff's ongoing medical condition. Whether Defendants denied him proper pain medication, such as morphine, in conscious disregard to Plaintiff's serious medical needs, is an issue to be further developed and resolved at the motion for summary judgment stage. This is particularly true given that Plaintiff was previously treated with morphine (even after the two alleged cheeking incidents which Plaintiff disputes), which was discontinued after the re-rupture and unsuccessful surgery, and the record is unclear what, if any, other pain medication was provided to treat Plaintiff's

---

[1] See Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002); Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

1  severe pain. In addition, whether physical therapy was an acceptable method of treatment given that
2  the second surgery was not successful, remains an issue to be resolved by way of further development
3  of the evidence at the summary judgment stage.

4      3.      Qualified Immunity

5      Defendants contend they are entitled to qualified immunity because Plaintiff has failed to pled
6  facts sufficient to support a violation of the Eighth Amendment, and because reasonable physicians
7  would believe that recommending physical therapy for Plaintiff's shoulder was reasonable under
8  established law.

9      Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an
10 absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mueller v.
11 Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified
12 immunity shields government officials from civil damages unless their conduct violates "clearly
13 established statutory or constitutional rights of which a reasonable person would have known."
14 Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important
15 interests - the need to hold public officials accountable when they exercise power irresponsibly and the
16 need to shield officials from harassment, distraction, and liability when they perform their duties
17 reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly
18 incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).

19     In resolving the claim of qualified immunity, the Court must determine whether, taken in the
20 light most favorable to Plaintiff, Defendants' conduct violated a constitutional right, and if so, whether
21 the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001); Mueller, 576 F.3d at 993.
22 While often beneficial to address in that order, the Court has discretion to address the two-step inquiry
23 in the order it deems most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling
24 holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is
25 reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

26     While it remains to be proven by admissible evidence that a constitutional violation has
27 occurred, at the pleading stage, however, Plaintiff's allegations are accepted as true and are sufficient
28 to establish that the Defendants were deliberately indifferent to his serious needs in violation of the

Eighth Amendment. By 2012, the beginning of the alleged constitutional violations herein, "the general law regarding the medical treatment of prisoners was clearly established," and "it was also clearly established that [medical officials] could not intentionally deny or delay access to medical care." Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002). Any reasonable doctor should have known that disregarding a serious medical need violates the Eighth Amendment. Accordingly, Defendants' motion to dismiss based on qualified immunity should be denied.

In sum, at this stage of the proceedings, the Court declines to find that Plaintiff's allegations are rebutted by the exhibits attached to his complaint or to find that Defendants are entitled to qualified immunity.

### 4.      Official Capacity Claims Barred by the Eleventh Amendment

Defendants lastly argue that a suit for damages against a state official in his official capacity is barred by the Eleventh Amendment.

In his complaint, Plaintiff sues each Defendant in his individual and official capacity for, among other things, punitive damages in the amount of $500,000.00 (ECF No. 1, at p. 27.)

The Supreme Court has held that states, state agencies, and state officials sued in their official capacities are not persons subject to civil rights suits under 42 U.S.C. § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 64-66 (1989). Further, the Eleventh Amendment bars Plaintiff's claims for damages against the named Defendants in their official capacities. See Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997); Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1996).

The Eleventh Amendment prohibits federal jurisdiction over suits against the state or a state agency unless the state or agency consents to the suit. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 53 (1996); Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984).

State officers acting in their official capacities receive the same immunity as the government agency that employs them. Hafer v. Melo, 502 U.S. 21 (1991). Thus, a state prison officials sued for damages in his or her official capacity is entitled to Eleventh Amendment immunity. Accordingly, Defendants Ulit, Smith, Moon and Wang are immune from suit for monetary damages in their official capacities under the Eleventh Amendment and their motion to dismiss such claim should be granted.

///

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss for failure to state a cognizable claim for relief be DENIED;

2. Defendants' motion to dismiss based on qualified immunity be DENIED; and

3. Defendants' motion dismiss Plaintiff's claims against Defendants in their official capacities be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __May 6, 2015__

UNITED STATES MAGISTRATE JUDGE