1

2

3

4

5

6

7

8                              **UNITED STATES DISTRICT COURT**

9                              **EASTERN DISTRICT OF CALIFORNIA**

10

11    RALPH GARBARINI,                         )    Case No.: 1:14-cv-01058-AWI-SAB (PC)
                                               )
12                    Plaintiff,               )
                                               )    FINDINGS AND RECOMMENDATION
13           v.                                )    RECOMMENDING PLAINTIFF'S MOTION FOR
                                               )    SUMMARY JUDGMENT BE DENIED
14    WAYNE ULIT, et al.,                       )
                                               )    [ECF No. 59]
15                    Defendants.              )
                                               )
16    _____ )

17           Plaintiff Ralph Garbarini is appearing pro se and in forma pauperis in this civil rights action

18    pursuant to 42 U.S.C. § 1983.  Currently before the Court is Plaintiff's motion for summary judgment,

19    filed December 21, 2015.  (ECF No. 59.)

20                                             **I.**

21                                    **RELEVANT HISTORY**

22           This action is proceeding against Defendants W. Ulit, J. Moon, D. Smith, and J. Wang for

23    deliberate indifference to a serious medical need in violation of the Eighth Amendment.

24           On December 21, 2015, Plaintiff filed a motion for summary judgment.  Defendants filed an

25    opposition on February 2, 2016, and Plaintiff filed a reply on February 16, 2016.  Pursuant to Local

26    Rule 230(*l*), the motion is deemed submitted without oral argument.

27    ///

28    ///

                                             1

## II.

### LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

///

///

///

///

2

**III.**

**DISCUSSION**

**A.      Summary of Plaintiff's Complaint**

In July 2012, while housed at Corcoran State Prison, Plaintiff suffered severe chronic pain in his right shoulder caused by a tendon tear in his right rotator cuff.  Plaintiff's medical condition significantly affects his daily activities causing severe pain throughout the day that also limited his sleep at night to three to four hours per night.

Plaintiff sought surgery to repair his rotator cuff and was seen by Defendant Doctor Wayne Ulit, Plaintiff's acting primary care physician (PCP) on July 19, 2012.  Dr. Ulit ordered surgery consultation to determine if surgery was necessary to repair Plaintiff's right rotator cuff.

On September 5, 2012, Plaintiff received a telemedicine consultation at Corcoran State Prison Hospital from orthopedic surgeon Chanrasekaran (hereinafter Dr. Chandra).   The impression from the consultation upgraded Plaintiff's tendon tear from a partial tear to a full thickness tear which was consistent with the increased pain Plaintiff was suffering.  Dr. Chandra recommended surgery.

Plaintiff was seen by Physician's Assistant, C. Sisodia on September 28, 2012.  On October 18, 2012, Plaintiff saw PCP Ulit where he was informed that surgery was denied.  Due to Plaintiff's serious medical need his pain medication was continued.

On September 30, 2012, Plaintiff filed a health care appeal requesting surgery be performed on his right rotator cuff as recommended by Dr. Chandra on September 5, 2012.

On November 23, 2012, Plaintiff experienced a massive tendon rupture in his right rotator cuff causing him excruciating chronic pain.  Plaintiff used the CDC 7362 Health Care Services Request Form to notify medical staff of his serious medical need and to again request the recommended surgery.

Plaintiff underwent open surgery to repair his right rotator cuff on December 13, 2012, at San Joaquin Community Hospital.  The surgery was performed by Dr. Chandra who noted the rotator cuff damage involved three tendons.

On January 29, 2013, Plaintiff experienced excruciating pain accompanied by a loud popping sound from his right shoulder while sitting in his cell.  Plaintiff's rotator cuff had re-ruptured causing

3

1  Plaintiff excruciating pain.   Visible deformities and extremely limited range of motion in his right

2  shoulder were present.

3          Plaintiff's serious shoulder injury significantly affects his daily activities beginning with

4  getting out of his bunk in the morning, trying to shave, putting on his pants, shirts and shoes.  Folding

5  a blanket is a major one armed task for Plaintiff.   Plaintiff's severe chronic pain limits his sleep to

6  three to four hours per night.   Plaintiff's pain also causes his chronic back pain to increase in severity.

7  Due to Plaintiff's serious medical needs, Defendant PCP Ulit continued to prescribe pain medication

8  to treat his pain.

9          Plaintiff's constant physical pain causes him mental anguish and emotional distress making

10  him feel depressed, hopeless, anxious and very irritable.   Plaintiff's ability to concentrate has

11  diminished to the point that reading, studying, drawing and other activities he used to perform with

12  ease are now fragmented and inconsistent efforts.

13          Plaintiff received a surgery consultation by Defendant Dr. David Gail Smith on March 1, 2013.

14  Dr. Smith ordered an MRI scan of Plaintiff's right shoulder.

15          Plaintiff received a second surgery consultation by Dr. Smith on June 5, 2013.  Based on the

16  MRI scan and objective findings, Dr. Smith confirmed that Plaintiff had re-ruptured his right rotator

17  cuff suffering a full thickness tendon tear.  Dr. Smith recommended surgery.

18          Plaintiff underwent open surgery to re-repair his right rotator cuff on July 11, 2013.   The

19  surgery was performed by Dr. Smith.

20          Following the Plaintiff's surgery on July 11, 2013, Plaintiff experienced excruciating pain and

21  extremely limited range of motion in his right shoulder to a degree that significantly affects his daily

22  activities and limits his sleep to three to four hours per night.   Plaintiff was convinced that his rotator

23  cuff was not repaired.

24          Due to Plaintiff's serious medical need, PCP Ulit continued to prescribe Plaintiff pain

25  medication.

26          Plaintiff expressed his medical concerns to both Dr. Ulit and Dr. Smith during follow-up visits

27  at Corcoran medical facilities between July 19, 2013 and October 11, 2013.   Both Defendants

28  repeatedly denied Plaintiff's claim that his rotator cuff was not repaired.

4

On July 26, 2013, Plaintiff had a follow-up visit with Dr. Smith at Corcoran Hospital.  Plaintiff told Dr. Smith that his rotator cuff was not repaired due to the severe chronic pain he was experiencing combined with his extremely limited range of motion in his right shoulder.

Dr. Smith stated that he had in fact repaired Plaintiff's right rotator cuff and recommended Plaintiff begin physical therapy.

Plaintiff stated that due to the severe chronic pain he was suffering in his right shoulder he could not do physical therapy.  Plaintiff also stated that when he participated in physical therapy form the same shoulder in June 2012, the therapy did not more damage than good.

Plaintiff stated that he believes the injury he suffered during physical therapy in June 2012, attributed to the subsequent rupture of his rotator cuff on November 22, 2012.

Dr. Smith again stated that he had repaired Plaintiff's right rotator cuff.  Plaintiff left the follow-up visit suffering severe chronic pain and feeling very depressed due to Dr. Smith's denials.

On August 29, 2013, Plaintiff was seen by PCP Ulit.  Plaintiff stated that he was experiencing severe chronic pain and extremely limited range of motion in his right rotator cuff insisting the rotator cuff was not repaired during his July 11, 2013, open surgery.  Plaintiff stated he feared the recommended physical therapy would cause more damage to his rotator cuff just as it had in June 2012.

Due to Plaintiff's serious medical need PCP Ulit continued to prescribe pain medication for Plaintiff's severe chronic pain.

Plaintiff wrote a letter to the Prison Law Officer explaining his medical situation and requested assistance in receiving effective treatment for his serious medical needs.  The Prison Law Office responded to Plaintiff's request by way of letter with supporting medical documentation.  The medical records show that Plaintiff's rotator cuff had a massive tendon tear and it was not repairable.  The records further show that Dr. Smith knew of the tendon tear and denied such fact during follow-up visits with Plaintiff.  The records also show Dr. Ulit knew or should have known of Plaintiff's massive tendon tear in his right cuff but denied the fact during follow-up visits with Plaintiff.

On October 7, 2013, Dr. Ulit stopped prescribing Plaintiff pain medication.  The pain medication also treated Plaintiff's progressive severe degenerative disc disease and progressive

arthritis in his right knee.

Dr. Ulit failed to initiate any alternative treatment for the severe chronic pain Plaintiff was experiencing while having actual knowledge of his serious medical need.

On October 11, 2013, Plaintiff was seen by Dr. Smith at Corcoran Hospital.  Plaintiff stated that his rotator cuff was not repaired.  Dr. Smith responded stating that he had repaired Plaintiff's rotator cuff and that he should begin physical therapy.  Plaintiff stated that he could not use his right arm to do simple daily tasks without excruciating pain and would likewise be unable to engage in physical therapy without further injuring his right rotator cuff.  Plaintiff requested effective treatment for his severe chronic pain.

Dr. Smith again insisted that he had repaired Plaintiff's rotator cuff.  Dr. Smith refused to treat Plaintiff's severe chronic pain while having actual knowledge of Plaintiff's serious medical needs.

On October 14, 2013, Plaintiff was seen by his newly assigned PCP Jong Moon at Corcoran State Prison.  Plaintiff's attempt to explain his medical condition to PCP Moon was met with hostility and indifference as he yelled in an angry tone of voice when speaking with Plaintiff.  Dr. Moon yelled "you are getting nothing from me."  Dr. Moon refused to treat Plaintiff's pain stating that Plaintiff "cheeked" his medication eighteen months earlier at a different prison.

Plaintiff informed PCP Moon that the single allegation of him "cheeking" his medication was false.  Plaintiff informed PCP Moon that due to his serious medical needs he was treated with pain medication for the prior thirteen months without incident and because of his recent second failed surgery to repair his rotator cuff he was in more pain now than in the past thirteen months.  PCP Moon responded in a loud hostile manner again stating "you are getting nothing from me" and told Plaintiff he would be called back in four weeks.  Plaintiff asked Defendant Moon if he was supposed to wait four weeks in severe pain and Moon answered loudly "yes."

Plaintiff left the visit in severe physical pain as well as suffering mental anguish and emotional distress.

Plaintiff filed a Health Care Appeal requesting his pain medication be reinstated to help alleviate his unnecessary physical and mental suffering associated with his severe chronic pain.

///

6

Plaintiff's inability to get treatment for his severe chronic pain has led to Plaintiff suffering anxiety, depression, hopelessness, and insomnia making him extremely irritable.   Plaintiff is overwhelmed by mental anguish and emotional distress.

Plaintiff sought psychiatric help from Dr. Gharakhanian on October 29, 2013.   Based on Plaintiff's mental health condition, Dr. Gharakhanian prescribed Plaintiff antidepressants and medication to help Plaintiff with his insomnia.   Plaintiff, out of necessity, continues to take psychotropic medication to this day with marginal results.

Plaintiff was seen by Dr. Moon on November 4, 2013 and November 11, 2013.  During both visits Plaintiff requested effective treatment for his severe chronic pain caused by a tendon tear in his right rotator cuff.  Plaintiff told Dr. Moon that his chronic pain had been with him since the failed surgery on July 11, 2013, and the pain had exacerbated his chronic back pain caused by his degenerative disc disease.  During both visits, Dr. Moon displayed hostility and indifference toward Plaintiff yelling at him "you will just have to wait for the pain committee."  Dr. Moon refused to treat Plaintiff's serious medical need while having knowledge of his serious medical problem.

On November 21, 2013, Plaintiff filed a Health Care Appeal requesting effective medical care for his torn right rotator cuff.  In the appeal, Plaintiff provides a summary of the medical treatment he received from medical staff at Corcoran State Prison and contracted surgeon from July 11, 2013 to November 11, 2013.

On December 3, 2013, one hundred and forty days after Plaintiff's failed surgery on July 11, 2013, Doctor Moon informed Plaintiff that his rotator cuff is not repairable.  Plaintiff again requested treatment for his severe pain.  Dr. Moon answered in an angry tone "you will have to wait for pain committee."  Dr. Moon refused to treat Plaintiff's serious medical need while having actual knowledge of his serious medical need.

On January 14, 2014, Dr. Jeffrey Wang approved a pain committee recommendation that failed to provide effective treatment for Plaintiff's severe chronic pain caused by a massive tendon tear in Plaintiff's right rotator cuff.  Dr. Wang had actual knowledge of Plaintiff's serious medical need and refused to provide effective treatment for his serious medical need.

///

7

**B.**     **Plaintiff's Statement of Undisputed Facts**

1.     Dr. Ulit was Plaintiff's primary care physician until October 7, 2013.  Plaintiff complained to Dr. Ulit of pain his right shoulder after the July 11, 2013 attempted re-pair of his right rotator cuff.  Dr. Ulit prescribed Plaintiff with Acetaminophen narcotic pain medications until October 7, 2013.

2.     Plaintiff underwent an arthroscopic attempted re-pair surgery of his torn right rotator cuff at Corcoran District Hospital on July 11, 2013 by Dr. Smith.  Dr. Smith concluded that Plaintiff suffered a non-repairable massive tendon tear of his right rotator cuff during the July 11, 2013 procedure.

3.     Plaintiff had a follow-up visit with Dr. Ulit on July 19, 2013.  Dr. Smith recommended that Plaintiff begin physical therapy.  Dr. Ulit prescribed Plaintiff narcotic medication at the July 19, 2013 follow-up appointment, and that it was increased to 30mg x2/day.

4.     Plaintiff had a follow-up visit with Dr. Smith on July 26, 2013.  Dr. Smith recommended that Plaintiff begin physical therapy but Plaintiff refused.

5.     Plaintiff had a follow-up visit with Dr. Ulit on August 29, 2013.  Dr. Ulit noted that the surgical incision was healing well, and he recommended physical therapy for Plaintiff.  Plaintiff refused to participate in physical therapy.  Dr. Ulit continued to prescribe Plaintiff's narcotic pain medications at this visit.

6.      Plaintiff had a follow-up visit with Dr. Ulit on September 19, 2013.  Dr. Ulit recommended physical therapy to Plaintiff again and Plaintiff refused.  Dr. Ulit continued to prescribe Plaintiff with narcotic pain medications at this appointment.

7.     Plaintiff had a follow-up visit with Dr. Smith on October 11, 2013.  Dr. Smith recommended physical therapy and Plaintiff refused.

8.     Plaintiff had his first appointment with Dr. Moon, his new primary care physician, on October 14, 2013.  Plaintiff requested reinstatement of his narcotic pain medications from Dr. Moon at this appointment.  Dr. Moon based his decision not to prescribe narcotic pain medications to Plaintiff at this visit on Plaintiff's prior cheeking episodes.

8

Dr. Moon referred Plaintiff's request for narcotic pain medications to the Pain Management Committee.

9.   Plaintiff submitted Healthcare Appeal Log #13054558 on October 25, 2013 and asked for his pain medications to be reinstated, and the appeal was denied at the Third Level of Review on May 19, 2014.

10.  Plaintiff saw Dr. Moon on November 4, 2013.

11.  Plaintiff submitted Health Care Appeal Log # 13054741 on November 21, 2013, requesting "effective medical care" for his shoulder, and the appeal was denied at the third level on June 9, 2014, because Plaintiff's request for "effective care" was overly vague and unanswerable.

12.  On December 3, 2013, Plaintiff had a follow up visit with Dr. Moon.  Dr. Moon suggested that Plaintiff try to use his left arm to do daily tasks.  Dr. Moon told Plaintiff he would have to wait for the decision by the Pain Management Committee to decide whether he would be allowed another prescription for narcotic pain medications.

13.  Dr. Wang provided a notification to Plaintiff on January 14, 2014, that the Pain Management Committee had reviewed his care and decided not to allow Plaintiff opioid pain medications.

14.  Dr. Wang co-authored a second level review of Plaintiff's grievance Log # 13054558 on February 6, 2014, and denied Plaintiff's request for narcotic pain medications.

15.   Dr. Wang co-authored a second level review decision partially granting Plaintiff's Appeal Log # 13054741.

**C.   Deliberate Indifference to a Serious Medical Need**

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition

9

could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

"A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm v. Rotman, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted). Deliberate indifference may be found if Defendants "deny, delay, or intentionally interfere with [a prisoner's serious need for] medical treatment." Hallet v. Morgan, 296 F.3d 732, 734 (9th Cir. 2002).

In order to prevail on a claim involving defendants' choices between alternative courses of treatment, a prisoner must show that the chosen treatment "was medically unacceptable under the circumstances" and was chosen "in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d at 332. In other words, so long as a defendant decides on a medically acceptable course of treatment, his actions will not be considered deliberately indifferent even if an alternative course of treatment was available. Id.

### D.     Findings on Plaintiff's Motion

In order to meet his burden, Plaintiff must come forward with evidence that establishes the lack of existence of a triable issue of fact. Plaintiff's evidence must establish, without dispute, that defendants knew of and disregarded a serious risk to Plaintiff's health, resulting in injury to Plaintiff.

In ruling on Plaintiff's motion for summary judgment, the Court must review the record as a whole and draw all reasonable inferences in favor of Defendants.  Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1109 (9th Cir. 2003).  If genuine disputes of fact exist because of the moving party's insufficient evidence to prove his case, then summary judgment is not warranted.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-249 (1986).  For the reasons explained below, Plaintiff has failed to carry his burden on summary judgment.  The Court will address each Defendant separately.

1.      Summary Judgment Against Dr. Smith

With regard to Dr. Smith, Plaintiff moves for summary judgment and argues that after Plaintiff's second failed surgery, Dr. Smith concluded that Plaintiff had suffered a massive tendon tear in his right rotator cuff which was non-repairable.  (Mot. at 6, ECF No. 61.)  However, during two follow-up visits with Dr. Smith he insisted he had repaired Plaintiff's rotator cuff, despite Plaintiff's claims of pain and suffering to the contrary.  (Id.)  During the second visit, Dr. Smith refused to treat Plaintiff's severe chronic pain.   (Id.)  In support of his argument, Plaintiff relies on an operative note from July 11, 2013, and the follow up visits with Dr. Smith on July 26, 2013, and October 11, 2013. (ECF No. 60 at ¶¶ 2, 4, 10.)

In opposition, Dr. Smith submits his declaration and declares that he informed Plaintiff at his post-procedure follow-up visits that he was unable to repair Plaintiff's rotator cuff during the July 11, 2013 procedure.  (ECF No. 66-3, Decl. of Dr. Smith ¶¶ 6-10.)

In reply, Plaintiff contends that Dr. Smith's statements represented in his declaration are untrue.  (Reply at 7.)

As evidenced by Plaintiff's contentions in his rely, the facts are disputed as to whether Plaintiff was subjected to deliberate indifference to a serious medical need by Dr. Smith, and Plaintiff's motion for summary judgment must be denied.

2.      Summary Judgment Against Dr. Ulit

Plaintiff contends that Dr. Ulit was deliberately indifferent to Plaintiff's serious medical needs by discontinuing his prescription for narcotic pain medication on October 7, 2013.  (Mot. at 5, ECF No. 61.)  Plaintiff references his medical documents which indicate that he had a narcotic prescription from Dr. Ulit through October 7, 2013.  (ECF No. 60 at ¶ 9.)

11

Plaintiff's evidence demonstrates that the narcotic pain medication prescription expired on October 7, 2013, and no refills were available.  Dr. Ulit submits his declaration and declares that after Plaintiff's surgery on July 11, 2013, he prescribed pain medications as he "felt it was medically necessary to initially implement a strong pain management plan, which included morphine."  (ECF No. 66-1, Decl. of Dr. Ulit ¶ 8.)   However, "[a]fter a period of time, the need for strong, narcotic pain medications is no longer medically necessary or advisable in light of the risks attendant to narcotics. Therefore, I prescribed non-narcotic medications to address Garbarini's pain management concerns.  I prescribed him stronger narcotic pain medications immediately after his July 11, 2013 procedure, and when the refills ran out on October 7, 2013, I did not renew the prescription.  Instead, I prescribed Garbarini with a high dose of non-narcotic pain medications for his pain management."  (Id. ¶ 9.)

In his reply, Plaintiff contends Dr. Ulit previously prescribed narcotic pain medication along with a prescription for Ibuprofen 800 milligrams three times a day.  Plaintiff references and submits his medical records for which he contends that from October 18, 2012 through September 30, 2013, Dr. Ulit prescribed narcotic pain medication for his shoulder injury.[1]  (Reply at ¶¶ 5-28, ECF No. 67.)

Plaintiff has failed to submit evidence, beyond his mere opinion, to support his contention that Dr. Ulit's decision not to prescribe opioid pain medication was done with deliberate indifference to his medical needs.  Based on Dr. Ulit's declaration, a dispute of facts exists as to whether the discontinuation of Plaintiff's narcotic pain medications on October 7, 2013, and whether Dr. Ulit's decision to not re-fill such prescription constitutes deliberate indifference to Plaintiff's serious medical needs.  Accordingly, Plaintiff's motion for summary judgment as to Dr. Ulit must be denied.

3.    Summary Judgment Against Dr. Moon

Plaintiff contends that he had multiple visits with Dr. Moon and Plaintiff repeatedly informed him that he was suffering from chronic pain in his right rotator cuff; however, Dr. Moon repeatedly refused to treat Plaintiff's serious medical condition and displayed hostility toward Plaintiff.   (Mot. at 6, ECF No. 61.)

---

[1]  However, upon review of the medical records submitted by Plaintiff, it is not clear that Dr. Ulit was the doctor who prescribed narcotic pain medication during all of the dates referenced by Plaintiff.  (See ECF No. 67, Exs. B12, B14.)

12

In opposition, Dr. Moon submits his declaration in which he declares that he was never hostile towards Plaintiff and did not yell at him.  (ECF No. 66-2, Decl. of Dr. Moon ¶¶ 3, 6.)  In response to Plaintiff's request for pain medication, Dr. Moon noted that Plaintiff "was not a candidate for narcotic medications due to the cheeking incidents."  (Id. ¶ 3.)  Nonetheless, Dr. Moon referred Plaintiff's request for narcotic pain medication to the pain management committee.  (Id.)  Thus, Dr. Moon declares that he did not ignore Plaintiff's medical needs.

In reply, Plaintiff contends the "cheeking incident" is a false allegation made by a correctional officer at a different prison and happened prior to Dr. Ulit's prescriptions for narcotic pain medication.

Based on the factual despite and lack of evidence submitted by Plaintiff that Dr. Moon's decision constituted deliberate indifference to his serious medical need, Plaintiff's motion for summary judgment must be denied.

4.     Summary Judgment Against Dr. Wang

Plaintiff claims Dr. Wang was deliberately indifferent to his serious medical need by approving the pain management committee's decision not to prescribe Plaintiff narcotics in which he claims was "effective treatment" to treat his shoulder.  (Mot. at 3, 7, ECF No. 61.)  Plaintiff further contends that Dr. Wang was deliberately indifferent to his serious medical needs when he reviewed, approved and authorized a pain committee recommendation and two health care appeals, which failed to effectively treat Plaintiff's serious medical needs.  (Id. at 8.)

In support of his arguments, Plaintiff cites and attaches a copy of the notice of the pain management committee's recommendation of denial of opioid medications signed by Dr. Wang on January 14, 2014.  (ECF No. 60 ¶¶ 17-19.)   Plaintiff also submits his inmate grievances and responses by Dr. Wang at the second level of review.  (Id.)

In his reply, Plaintiff further contends that at the time of the pain management committee's denial and denial of health care appeal at the second level by Dr. Wang, "medical outcome data" existed showing that he continued to suffer severe chronic pain caused by a non-repairable massive tendon tear in his right shoulder.

In the second level response, in Appeal Log # COR HC 13054558, dated February 6, 2014, Dr. Wang noted in pertinent part the following:

> Your case was reviewed by the Pain Committee on 1/14/2014.  It was determined opioids are denied.  You are currently on Ibuprofen.  You are to continue this.  You will be seen for a follow-up to the PMC on 2/18/14 with Dr. Moon.  You can discuss your concerns further at that time.  At the Second Level of Review this appeal was denied.

(ECF 67, Ex. A17.)

In the second level response in Appeal Log # COR HC 13054741, dated February 18, 2014, Dr. Wang noted in pertinent part the following:

> For the Second Level we have reviewed your appeal with attachment(s), Unit Health Record (eUHR), and all pertinent departmental policies and procedures.  Your issues will be addressed in the order they appear above.

> Issue 1: Treatment for right shoulder-partially granted.  You have already had two shoulder surgeries on the right shoulder.  You were followed up by Dr. Smith on 10/11/13.  One month prior to you filing this appeal.  He stated you had refused PT.  He recommended you have PT.  On 11.27.2013 you were seen by PT and given exercises to do.  Another surgery is not recommended.  You are to do the exercises as shown in PT.  You are to continue with your current pain medication.  You have a current chrono for lower bunk and waist chain chrono for your comfort and to avoid further injury to the shoulder in question.

> Issue 2: RFS-Orthopedics-denied.  A referral is not necessary at this time.  You are to do the exercises as shown in PT.  Your case was discussed in the Pain Management Committee on 1/14/2014.  Opioids were not recommended.

> At the Second Level of Review this appeal was partially granted.

(ECF No. 67, Ex. A20.)

Drawing all reasonable inferences in favor of Dr. Wang, as this Court must, Plaintiff has failed to submit conclusive evidence to demonstrate that Dr. Wang's agreement with the pain management committee to not allow Plaintiff opioid medication constitutes medical deliberate indifference, or that Dr. Wang's administrative decision relating to Plaintiff's appeal was done in conscious disregard to Plaintiff's serious medical needs.  Accordingly, Plaintiff's motion for summary judgment as to Dr. Wang should be denied.

## IV.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that Plaintiff's motion for summary judgment be DENIED, in its entirety.

1        This Findings and Recommendation will be submitted to the United States District Judge

2 assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days**

3 after being served with this Findings and Recommendation, the parties may file written objections

4 with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and

5 Recommendation."  The parties are advised that failure to file objections within the specified time may

6 result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014).

7

8 IT IS SO ORDERED.

9 Dated:   **March 10, 2016**

10                                                      UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28