# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH GARBARINI,<br><br>Plaintiff,<br><br>v.<br><br>WAYNE ULIT, et al.,<br><br>Defendants. | Case No. 1:14-cv-01058-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS SMITH, ULIT, MOON, AND WANG'S MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 105, 108, 112, 114, 115, 116, 117, 120, 122, 123, 124, 125, 126, 128, 129, 130)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

Plaintiff Ralph Garbarini, a state prisoner, is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the Court are four motions for summary judgment filed by Defendants David G. Smith, Wayne Ulit, Jong Yeoung Moon, and Jeffrey J. Wang.[1]

## I.

## PROCEDURAL HISTORY

Plaintiff filed this action on June 7, 2014. (ECF No. 1.) On October 24, 2014, the compliant was screened and Plaintiff was found to state a cognizable claim against Dr. Ulit, Dr. Smith, Dr. Moon, and Dr. Wang for deliberate indifference to a serious medical need in violation

---

[1] Plaintiff was contemporaneously provided with notice of the requirements for opposing a motion for summary judgment. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (ECF Nos. 105-7, 108-6, 112-5, 125.)

of the Eighth Amendment.  (ECF No. 7.)

Defendants filed a motion to dismiss on February 10, 2015.  (ECF No. 14.)  On March 30, 2015, Plaintiff filed a motion for summary judgment.  (ECF No. 19.)  On May 7, 2015, the undersigned issued findings and recommendations recommending that Defendants' motion be denied on the grounds that the complaint failed to state a cognizable claim for relief and on the basis of qualified immunity, and that the motion be granted for the claims against Defendants in their official capacities.  (ECF No. 31.)  On June 25, 2015, the District Judge adopted in part the findings and recommendations, and Defendants' motion for summary judgment was denied on the ground of failure to state a claim and qualified immunity.  (ECF No. 36.)  Summary judgment was granted on the official capacity claims to the extent that Plaintiff sought monetary damages, but denied for Plaintiff's claims for injunctive relief.  (Id.)

On July 6, 2015, Plaintiff filed a motion for leave to file a first amended complaint and a first amended complaint was lodged.  (ECF Nos. 37, 38.)  On October 1, 2015, Plaintiff was granted leave to file a first amended complaint and Plaintiff's motion for summary judgment was denied as moot.  (ECF No. 49.)  Plaintiff's first amended complaint was filed on September 30, 2015.  (ECF No. 50.)  Plaintiff's first amended complaint was screened and was found to state a cognizable claim for deliberate indifference to a serious medical need against Defendants Wang, Ulit, Moon, and Smith on November 5, 2015.  (ECF No. 53.)  Defendants filed an answer to the first amended complaint on December 7, 2015.  (ECF No. 54.)

Plaintiff filed a second motion for summary judgment on December 21, 2015.  (ECF Nos. 59-61.)  On March 8, 2017, Defendant Wang filed a motion for summary judgment for failure to exhaust administrative remedies.  (ECF Nos. 68-69.)  The undersigned issued findings and recommendations recommending denying Plaintiff's motion for summary judgment on March 10, 2016.  (ECF No. 70.)  On June 1, 2016, the District Judge adopted the findings and recommendations and Plaintiff's motion for summary judgment was denied.  (ECF No. 77.)  On October 31, 2016, the undersigned issued findings and recommendations recommending that Defendant Wang's motion for summary judgment for failure to exhaust administrative remedies be denied.  (ECF No. 90.)  On February 9, 2017, the District Judge adopted the findings and

recommendations and Defendant Wang's motion for summary judgment was denied.

On March 2, 2017, Defendant Smith filed a motion for summary judgment. (ECF No. 105.) On March 3, 2017, Defendant Ulit filed a motion for summary judgment. (ECF No. 108.) On March 10, 2017, Defendant Moon filed a motion for summary judgment. (ECF Nos. 112-113.) On March 20, 2017, Plaintiff filed an opposition to Dr. Ulit's motion for summary judgment. (ECF No. 114.) On March 27, 2017, Defendant Ulit filed a reply to Plaintiff's opposition and Plaintiff filed an opposition to Defendant Smith's motion for summary judgment. (ECF Nos. 116, 117.) Defendant Smith filed a reply to Plaintiff's opposition on April 4, 2017. (ECF No. 117.) On April 5, 2017, Plaintiff filed an opposition to Defendant Moon's motion for summary judgment and a correction on April 6, 2017. (ECF Nos. 119, 120.) On April 12, 2017, Defendant Moon filed a reply to Plaintiff's opposition. (ECF No. 122.) On April 13, 2017, Plaintiff filed a surreply to Defendant Ulit's reply to his opposition. (ECF No. 123.) On April 14, 2017, Plaintiff filed a surreply to Defendant Smith's reply to Plaintiff's opposition. (ECF No. 124.)

On April 21, 2017, Defendant Wang filed a motion for summary judgment. (ECF No. 125.) On April 26, 2017, Plaintiff filed a surreply to Defendant Moon's reply to his opposition. (ECF No. 126.) On May 2, 2017, Plaintiff filed an opposition to Defendant Wang's motion for summary judgment. (ECF No. 128.) Defendant Wang filed a reply on May 8, 2017. (ECF No. 129.)

The Local Rules provide for a motion, an opposition, and a reply. Neither the Local Rules nor the Federal Rules provide the right to file a surreply, and the Court neither requested one nor granted a request on the behalf of Plaintiff to file one. Accordingly, Plaintiff's surreplies filed on April 13, 2017; April 14, 2017; and April 26, 2017 are disregarded.

## II.

## LEGAL STANDARD

### A. Summary Judgment

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all

inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

In arriving at this recommendation, the Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission or reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**B.      Deliberate Indifference to Serious Medical Needs**

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. <u>Snow v. McDaniel</u>, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, <u>Peralta v. Dillard</u>, 744 F.3d 1076, 1082-83 (9th Cir. 2014); <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1122 (9th Cir. 2012); <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006). To prevail on his Eighth Amendment claim, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. <u>Snow</u>, 681 F.3d at 985 (citation and quotation marks omitted); <u>Wilhelm</u>, 680 F.3d at 1122.

**III.**

**SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

In July 2012, while housed at Corcoran State Prison ("CSP"), Plaintiff suffered severe

chronic pain in his right shoulder caused by a tendon tear in his right rotator cuff. (First Am. Compl. ("FAC") ¶ 2, ECF No. 50.) Plaintiff sought surgery to repair his rotator cuff and was seen by Defendant Wayne Ulit, Plaintiff's acting primary care physician (PCP) on July 19, 2012. (FAC ¶ 3.) Defendant Ulit ordered surgery consultation to determine if surgery was necessary to repair Plaintiff's right rotator cuff. (FAC ¶ 3.)

On September 5, 2012, Plaintiff received a telemedicine consultation at CSP Hospital from orthopedic surgeon Dr. Chandra. (FAC ¶ 4.) The impression from the consultation upgraded Plaintiff's tendon tear from a partial tear to a full thickness tear which was consistent with the increased pain Plaintiff was suffering and Dr. Chandra recommended surgery. (FAC ¶ 4.)

Plaintiff was seen by Physician's Assistant, C. Sisodia on September 28, 2012. (FAC ¶ 5.) On October 18, 2012, Plaintiff saw Defendant Ulit. (FAC ¶ 5.) During both visits Plaintiff was informed that surgery was denied. (FAC ¶ 5.) Due to Plaintiff's serious medical need his pain medication was continued. (FAC ¶ 5.)

On September 30, 2012, Plaintiff filed a health care appeal requesting surgery be performed on his right rotator cuff as recommended by Dr. Chandra on September 5, 2012. (FAC ¶ 6.)

On November 23, 2012, Plaintiff experienced a massive tendon rupture in his right rotator cuff causing him excruciating chronic pain and limited range of motion in his right shoulder. (FAC ¶ 7.) Plaintiff used the CDC 7362 Health Care Services Request Form to notify medical staff of his serious medical need and to again request the recommended surgery. (FAC ¶ 7.) Dr. Chandra performed surgery to repair Plaintiff's right rotator cuff on December 13, 2012, at San Joaquin Community Hospital. (FAC ¶ 8.)

On January 29, 2013, Plaintiff experienced excruciating pain accompanied by a loud popping sound from his right shoulder while sitting in his cell. (FAC ¶ 9.) Plaintiff's rotator cuff had re-ruptured causing Plaintiff excruciating pain with visible deformities and extremely limited range of motion in his right shoulder. (FAC ¶ 9.)

Due to his shoulder injury, Plaintiff has difficulties with his daily activities such as

getting out of his bunk in the morning, trying to shave, and putting on his pants, shirts and shoes. (FAC ¶ 10.) Folding a blanket is a major one armed task for Plaintiff. (FAC ¶ 10.) Plaintiff's severe chronic pain limits his sleep to three to four hours per night. (FAC ¶ 10.) Plaintiff's pain also causes his chronic back pain to increase in severity. (FAC ¶ 10.) Due to Plaintiff's serious medical needs, Defendant Ulit continued to prescribe pain medication. (FAC ¶ 10.)

Plaintiff's constant physical pain causes him mental anguish and emotional distress making him feel depressed, hopeless, anxious and very irritable. (FAC ¶ 11.) Plaintiff's ability to concentrate has diminished to the point that reading, studying, drawing and other activities he used to perform with ease are now fragmented and inconsistent efforts. (FAC ¶ 11.)

On March 1, 2013, Plaintiff received a surgery consultation with Defendant Smith who ordered an MRI scan of Plaintiff's right shoulder. (FAC ¶ 12.) Plaintiff received a second surgery consultation with Defendant Smith on June 5, 2013. (FAC ¶ 13.) Based on the MRI scan and objective findings, Defendant Smith confirmed that Plaintiff had re-ruptured his right rotator cuff suffering a full thickness tendon tear and recommended surgery. (FAC ¶ 13.)

On July 11, 2013, Defendant Smith performed surgery to re-repair Plaintiff's right rotator cuff. (FAC ¶ 14.)

Plaintiff saw Defendant Ulit on July 19, 2013. (FAC ¶ 15.) Plaintiff told Defendant Ulit that his rotator cuff was causing severe chronic pain that interrupted his sleep and he was only able to sleep three to four hours a night. (FAC ¶ 15.) Plaintiff told Defendant Ulit that he was convinced that his rotator cuff was not repaired during the surgery by Defendant Smith. (FAC ¶ 15.) Defendant Ulit told Plaintiff that he did not know what to do with Plaintiff and that he would be seen by Defendant Smith the following week. (FAC ¶ 16.) Defendant Ulit increased Plaintiff's pain medication to morphine to address his pain. (FAC ¶ 16.)

On July 26, 2013, Plaintiff had a follow-up visit with Defendant Smith at CSP Hospital. (FAC ¶ 17.) Plaintiff told Defendant Smith that his rotator cuff was not repaired due to the severe chronic pain he was experiencing combined with his extremely limited range of motion in his right shoulder. (FAC ¶ 17.) Defendant Smith stated that he had in fact repaired Plaintiff's right rotator cuff and recommended Plaintiff begin physical therapy. (FAC ¶ 18.) Plaintiff

responded that he was sure that his rotator cuff had not been repaired and he was concerned that participating in physical therapy would exacerbate his injury as had happened in June 2012. (FAC ¶ 19.)  Defendant Smith insisted that he had repaired Plaintiff's right rotator cuff during the July 11, 2013 surgery.  (FAC ¶ 20.)  Plaintiff left the visit suffering from chronic pain in his right rotator cuff and mental anguish and emotional distress due to Defendant Smith's repeated assurances that he had repaired Plaintiff's rotator cuff.  (FAC ¶ 21.)

On August 29, 2013, Plaintiff was seen by Defendant Ulit.  (FAC ¶ 22.)  Plaintiff stated that he was experiencing severe chronic pain and extremely limited range of motion in his right shoulder insisting the rotator cuff was not repaired during his July 11, 2013 open surgery.  (FAC ¶ 22.)  Defendant Ulit told Plaintiff that Defendant Smith had found that his shoulder was healing very well and asked Plaintiff if he wanted to do physical therapy.  (FAC ¶ 23.)  Plaintiff told Defendant Ulit that he was afraid that physical therapy would exacerbate his already damaged shoulder.  (FAC ¶ 23.)  Defendant Ulit prescribed Plaintiff morphine for his pain. (FAC ¶ 23.)

Plaintiff wrote a letter to the Prison Law Officer explaining his medical situation and requested assistance in receiving effective treatment for his serious medical needs.  (FAC ¶ 24.)

At a follow-up visit on September 19, 2013, Plaintiff told Defendant Ulit that he was continuing to have severe chronic pain in his rotator cuff and extremely limited range of motion in his right shoulder.  (FAC ¶ 25.)  Defendant Ulit offered Plaintiff physical therapy, but Plaintiff declined due to his belief that his shoulder had not been repaired.  (FAC ¶ 25.)  Defendant Ulit continued to prescribe Plaintiff morphine and ibuprofen.  (FAC ¶ 25.)

Plaintiff received a response from the Prison Law Office and supporting medical documentation which showed that Plaintiff's rotator cuff had a massive tendon tear and it was not repairable.  (FAC ¶ 26.)  The records further show that Defendant Smith knew of the tendon tear and denied such fact during follow-up visits with Plaintiff.  (FAC ¶ 26.)  The records also show Defendant Ulit knew or should have known of Plaintiff's massive tendon tear in his right cuff but denied the fact during follow-up visits with Plaintiff.  (FAC ¶ 26.)

On October 7, 2013, Defendant Ulit stopped prescribing Plaintiff pain medication that

had been helping his severe chronic shoulder pain. (FAC ¶ 27.)

On October 11, 2013, Plaintiff was seen by Defendant Smith at CSP Hospital. (FAC ¶ 28.) Plaintiff told Defendant Smith that he was continuing to experience severe chronic pain and limited range of motion and that his rotator cuff was not repaired. (FAC ¶ 28.) Defendant Smith insisted that he had repaired Plaintiff's rotator cuff and that he should begin physical therapy. (FAC ¶ 29.) Plaintiff stated that he could not use his right arm to do simple daily tasks without excruciating pain and would likewise be unable to engage in physical therapy without further injuring his right rotator cuff. (FAC ¶ 29.) Plaintiff told Defendant Smith that Defendant Ulit had wrongfully stopped his pain medication despite knowing that Plaintiff continued to experience pain. (FAC ¶ 29.) Plaintiff requested that Defendant Smith reinstate his pain medication. (FAC ¶ 29.) Dr. Smith again insisted that he had repaired Plaintiff's rotator cuff and refused the request for pain medication. (FAC ¶ 29.)

After submitting a medical request to receive treatment for his severe chronic pain, Plaintiff was seen on October 14, 2013, by Defendant Moon. (FAC ¶¶ 30, 31.) Plaintiff told Defendant Moon that he was suffering from severe chronic pain in his right rotator cuff and extremely limited range of motion and that the surgery had not repaired his shoulder injury. (FAC ¶ 31.) Plaintiff also told Defendant Moon that Defendant Ulit had wrongly stopped his pain medication seven days earlier. (FAC ¶ 31.) When Plaintiff requested that Defendant Moon prescribe pain medication, Defendant Moon screamed, "you will get nothing from me!" (FAC ¶ 32.) Defendant Moon ignored Plaintiff's complaints and concentrated on a false allegation that Plaintiff "cheeked" his medication eighteen months earlier at a different prison. (FAC ¶ 32.)

Plaintiff told Defendant Moon that the single allegation of him "cheeking" his medication was false and had happened eighteen months earlier at a different prison. (FAC ¶ 33.) Further, Plaintiff informed PCP Moon that due to his serious medical needs he was treated with pain medication for the prior thirteen months without incident. (FAC ¶ 33.) Defendant Moon again told Plaintiff that he would get nothing from him and told Plaintiff he would be put Plaintiff up for the Pain Management Committee which would take four weeks. (FAC ¶ 33.) When Plaintiff asked if he was supposed to wait four weeks in severe and chronic pain, Defendant Moon

screamed, "yes." (FAC ¶ 33.)

Plaintiff filed a Health Care Appeal requesting his pain medication be reinstated to help alleviate his unnecessary physical and mental suffering associated with his severe chronic pain. (FAC ¶ 34.) Plaintiff waited for seven months in severe chronic pain while his appeal was processed, denied, and exhausted. (FAC ¶ 34.)

Plaintiff sought psychiatric help from Dr. Gharakhanian on October 29, 2013. (FAC ¶ 36.) Based on Plaintiff's mental health condition, Dr. Gharakhanian prescribed Plaintiff antidepressants and medication to help Plaintiff with his insomnia. (FAC ¶ 36.) Plaintiff, out of necessity, continues to take psychotropic medication to this day with marginal results. (FAC ¶ 36.)

Plaintiff was seen by Defendant Moon on November 4, 2013, and November 11, 2013. (FAC ¶ 37.) During both visits Plaintiff told Defendant Moon that he continued to have severe chronic pain in his right rotator cuff and extremely limited range of motion and that he was certain that his right rotator cuff was not repaired and that his pain medication was wrongly discontinued. (FAC ¶ 37.) Plaintiff requested that his pain medication be reinstated. (FAC ¶ 37.) Defendant Moon ignored Plaintiff's requests and told Plaintiff that he would have to wait for the decision from the Pain Management Committee. (FAC ¶ 38.) Plaintiff was told to use his left arm for his daily activities and Defendant Moon continually brought up the alleged cheeking incident from eighteen months earlier. (FAC ¶ 38.) Defendant Moon refused Plaintiff's request that he look at Defendant Smith's notes from the July 11, 2013 surgery which showed that Plaintiff had a non-repairable tendon tear in his right rotator cuff. (FAC ¶ 38.)

On November 21, 2013, Plaintiff filed a Health Care Appeal requesting effective medical care for his torn right rotator cuff. (FAC ¶ 39.) In the appeal, Plaintiff provided a summary of the medical treatment he received from medical staff at CSP and contracted surgeon from July 11, 2013 to November 11, 2013. (FAC ¶ 39.) Plaintiff's appeal was denied on June 9, 2014. (FAC ¶ 39.)

On December 3, 2013, Plaintiff was seen by Defendant Moon. (FAC ¶ 40.) Plaintiff told Defendant Moon that he continued to have severe chronic pain in his right rotator cuff and

extremely limited range of motion in his right shoulder and requested pain medication. (FAC ¶ 40.) Defendant Moon was hostile toward Plaintiff and refused Plaintiff's request for treatment of his pain and suggested that Plaintiff do his activities with his left arm. (FAC ¶ 40.) Defendant Moon told Plaintiff that his rotator cuff repair was difficult. (FAC ¶ 41.) Plaintiff responded that the repair was non-existent and asked Defendant Moon to look at Defendant Smith's operative notes. (FAC ¶ 41.) Defendant Moon told Plaintiff that he would have to wait for the Pain Management Committee. (FAC ¶ 41.) Plaintiff told Defendant Moon that he had been waiting for three months for the Pain Management Committee in severe chronic pain. (FAC ¶ 41.)

On January 14, 2014, Defendant Wang approved a Pain Management Committee recommendation that failed to provide effective treatment for Plaintiff's severe chronic pain caused by a massive tendon tear in Plaintiff's right rotator cuff. (FAC ¶ 42.)

On February 6, 2014, Defendant Wang reviewed, approved and authorized a second level response to Plaintiff's health care appeal denying Plaintiff's request to have his pain medication reinstated. (FAC ¶ 43.) On February 19, 2014, Defendant Wang partially granted Plaintiff's appeal but did not give Plaintiff effective pain treatment for his chronic pain. (FAC ¶ 44.)

### IV.

### UNDISPUTED FACTS[2]

On December 13, 2012, Dr. Chandra performed surgery to repair Plaintiff's right rotator cuff. On January 29, 2013, approximately six weeks after the surgery, Plaintiff alleges that he suddenly experienced a loud "popping" sound, excruciating pain, visible deformities, and limited range of motion in his right shoulder. Plaintiff was referred to Defendant Smith by his California Department of Corrections and Rehabilitation ("CDCR") medical providers.

On March 1, 2013, Plaintiff had his first appointment with Defendant Smith at the orthopedic specialty clinic. Defendant Smith's physical examination of Plaintiff revealed limited range of motion in abduction and forward flexion to about 120 degrees as well as weakness of

---

[2] The Court shall set forth those facts that are common to all defendants' motions for summary judgment. All other facts will be addressed as they are relevant to the individual motion under consideration. The Court will only address Plaintiff's disputes with the stated facts where an actual dispute exists.

abduction and forward flexion in his right shoulder. Defendant Smith recommended that Plaintiff undergo an MRI of the right shoulder.

On June 5, 2013, Plaintiff was seen in the orthopedic specialty clinic for another consultation with Defendant Smith. Defendant Smith noted that Plaintiff had undergone an MRI scan which confirmed that Plaintiff had re-ruptured his right rotator cuff with full thickness tears once again. Defendant Smith examined Plaintiff, finding that he still had painful range of motion of the right shoulder and weakness of abduction and forward flexion. Defendant Smith recommended surgery to re-repair the rotator cuff and submitted a request for the surgery to CDCR medical providers.

Defendant Smith performed arthroscopy of Plaintiff's right shoulder at Corcoran District Hospital on July 11, 2013. While performing the arthroscopic examination of Plaintiff's right rotator cuff, Defendant Smith visualized the rotator cuff rupture, noting that it was massive in size. However, Defendant Smith was able to partially mobilize the rotator cuff and felt that an attempt at a re-repair was indicated. Therefore, he removed the arthroscope and made an incision. Once the rotator cuff tear was exposed, Defendant Smith attempted to mobilize it enough to allow him to perform the repair, but was unable to do so due to the size of the rupture. Despite Defendant Smith's efforts, the rotator cuff tear was not repairable.

On July 19, 2013, Plaintiff's CDCR primary care physician, Defendant Ulit, saw Plaintiff for a surgical follow-up. After physically examining Plaintiff, Defendant Ulit cleaned his wound and placed a sterile dressing. Defendant Ulit also requested an order (a "chrono") for an arm sling and recommended that Plaintiff follow up with Defendant Smith, the surgeon, the following week.

Plaintiff saw Defendant Smith on July 26, 2013, for a follow-up appointment. At this appointment, Defendant Smith recommended that Plaintiff start physical therapy to help with pain and improve shoulder mobility. Plaintiff refused this suggestion. Defendant Smith advised Plaintiff to perform some gentle pendulum exercises on his shoulder.

Plaintiff was seen by Defendant Ulit on August 29, 2013. Plaintiff explained that his

shoulder felt the same as it had before his recent surgery by Defendant Smith.[3] Defendant Ulit
conducted a physical examination of Plaintiff's right shoulder and noted that his range of motion
was limited due to pain, but that the wound was healing well with no inflammation. Defendant
Ulit noted that Plaintiff had previously refused physical therapy on his shoulder. Defendant Ulit
offered physical therapy to Plaintiff again because his rotator cuff tear was irreparable and
physical therapy was his only remaining option for pain relief and improved range of motion.
Plaintiff refused to participate in physical therapy. Because Plaintiff expressed concerns with his
shoulder, seemed to doubt Defendant Smith's repair and refused physical therapy, Defendant
Ulit referred him back to Defendant Smith to discuss his medical care.

Plaintiff's next appointment with Defendant Ulit was on September 19, 2013. Plaintiff
again explained that his shoulder felt the same as it had before the surgery and accused
Defendant Smith of doing nothing for his shoulder despite the surgery. Defendant Ulit examined
Plaintiff's right shoulder and noted there was mild range of motion, but no swelling. Plaintiff
again refused the physical therapy that Defendant Ulit had offered. Defendant Ulit told Plaintiff
to discuss his concerns with Defendant Smith rather than seeking treatment from another surgeon
and Plaintiff agreed to this plan. The September 19, 2013 visit was the final visit Defendant Ulit
had with Plaintiff before he began treatment with a new primary care physician, Defendant
Moon.

Plaintiff saw Defendant Smith on October 11, 2013. Plaintiff still complained of pain in
his right shoulder and had not begun physical therapy. Defendant Smith once again
recommended that he begin physical therapy, but Plaintiff refused. Defendant Smith
recommended Plaintiff have a "no work" chrono for two months. Plaintiff expressed that he did
not wish to have any follow-up with Defendant Smith, so no further follow up appointment was
scheduled. The October 11, 2013 consultation was Defendant Smith's last involvement with
Plaintiff's medical care, and Defendant Smith was not contacted again by CDCR to provide any
further medical care to Plaintiff.

---

[3] Plaintiff disputes that he informed Defendant Ulit that his shoulder felt the same as before his July 11, 2013
surgery and states that he informed Defendant Ulit that he had severe chronic pain from his shoulder and did not
believe that his rotator cuff had been repaired.

On October 14, 2013, Plaintiff had an appointment with Defendant Moon. Defendant Moon noted Plaintiff's focus on pain medication and request for his morphine prescription to be refilled. Defendant Moon noted that Plaintiff had two prior cheeking episodes in May and November 2012. Defendant Moon explained to Plaintiff that due to the cheeking incidents, Plaintiff was not a candidate for narcotics, but that he would present Plaintiff's request to the prison's pain committee and bring Plaintiff back in four weeks to complete a pain intake questionnaire. Plaintiff's prescription for ibuprofen was continued.

The CDCR pain management guidelines recommend that if a patient insists that he is is severe chronic pain, but objective evidence indicating severe pain is not present, the patient should be referred to the Institutions Pain Committee.

On October 25, 2013, Plaintiff submitted health care appeal no. 13054558 requesting that his morphine be reinstated.[4]

Plaintiff saw Defendant Moon again on November 4, 2013, and Plaintiff refused to allow Defendant Moon to check his passive range of motion but his pendulum motion was normal. Defendant Moon was unable to make any objective findings that would support Plaintiff's need for morphine. Defendant Moon continued to prescribe ibuprofen for Plaintiff.

On November 21, 2013, Plaintiff submitted a second health care appeal no. 13054741 requesting effective medical care for his torn rotator cuff.

On December 3, 2013, Defendant Moon saw Plaintiff for his grievance related to his shoulder pain. Plaintiff again requested morphine. Defendant Moon explained to Plaintiff that the Pain Management Committee would be meeting the following month to make a determination on his request for pain medication. Defendant Moon recommended that Plaintiff partake in physical therapy, but Plaintiff refused. Plaintiff was prescribed ibuprofen. On December 6, 2013, Plaintiff's appeal was partially granted and Plaintiff was advised that there was a pending referral to the Pain Management Committee to assess Plaintiff's medication needs.

---

[4] Plaintiff disputes this fact stating that he requested his pain medication be reinstated. Since Plaintiff had been taking morphine and was asking for his prescription to be reinstated there is no actual dispute as to this fact.

On January 2, 2014, Plaintiff submitted appeal no. 13054558 to the second level of review. On January 10, 2014, Plaintiff submitted appeal no. 13054741 to the second level of review.

On January 14, 2014, the Pain Management Committee at CSP reviewed Plaintiff's medical care and made the recommendation of "No Opioids" for Plaintiff. Defendant Wang was not a member of the Pain Committee and did not participate in the decision to recommend no opioids.

Teresa Marcias and Defendant Wang reviewed Plaintiff's appeal no. 13054558 at the second level of review. Plaintiff's appeal, attachments, and unit health records were reviewed along with all pertinent departmental policies and procedures. Plaintiff's appeal was denied because the Pain Management Committee had determined that opioids were unnecessary and Plaintiff was receiving Ibuprofen. Plaintiff was advised to continue taking ibuprofen and to discuss his concerns at his February 18, 2014 appointment with Defendant Moon. Defendant Wang did not interview, examine, or treat Plaintiff related to appeal no. 13054558.

On February 18, 2014, Teresa Macias and Defendant Wang conducted the second level review of Plaintiff's appeal no. 13054741. Plaintiff's appeal, attachments, unit health records and all pertinent departmental policies and procedures were reviewed. Plaintiff's appeal was partially granted at the second level. Plaintiff was informed that he was to continue his current medication (ibuprofen) and that his lower bunk and waist chains chronos were current to provide him with comfort and to avoid further injury of his shoulder. It was also noted that the Pain Management Committee had discussed Plaintiff's case on January 14, 2014, and the Committee had recommended that no opioids be provided to Plaintiff. Defendant Wang did not interview, examine, or treat Plaintiff in relation to appeal 13054741.

## V.

## DISCUSSION

### A. Defendant Smith's Motion for Summary Judgment

1. <u>Arguments of the Parties</u>

Defendant Smith contends that Plaintiff has brought claims alleging 1) that Defendant

Smith violated the Eighth Amendment by misinforming him that his shoulder had been repaired; and 2) by refusing to reinstate his prescription for morphine after it was stopped by Defendant Ulit in October 2013. Defendant Smith argues that while he is unable to find a case directly on point, a line of cases addressing misrepresentation under the Fourteenth Amendment is instructive. Defendant Smith states that Courts have found that a failure to impart medical information cannot provide the basis of a constitutional violation. Defendant Smith further argues that, similar to the Eighth Amendment, the Fourteenth Amendment claim requires that the defendant act with the requisite state of mind and both the Eighth and Fourteenth Amendment require deliberate indifference in this circumstance.

Defendant Smith asserts that there is no evidence that he purposely intended to mislead Plaintiff rather than any miscommunication was a negligent act. Defendant Smith also argues that Plaintiff was not subjected to an unreasonable risk of harm due to the miscommunication. Defendant Smith contends that the overall medical treatment he provided to Plaintiff belies the claim of deliberate indifference. Defendant Smith examined Plaintiff, recommended an MRI to confirm the diagnosis, reviewed the MRI, and recommended a second surgery. While the rotator cuff injury was too severe to be repaired, Defendant Smith ordered follow-up care including wound dressing instructions, an arm sling, ice packs, a follow-up appointment, and pain medication for ten days. On follow-up appointments, Defendant Smith recommended Plaintiff have physical therapy, but Plaintiff refused.

Further, Defendant Smith argues that Plaintiff's disagreement with a medical provider's care and treatment is insufficient to state a claim for deliberate indifference and Plaintiff's claim is just such a case. When Plaintiff last saw Defendant Smith on October 11, 2013, Plaintiff stated that he did not want to see Defendant Smith any further. At this time, Plaintiff's pain medication was being managed by Defendant Ulit and Defendant Smith had no authority to prescribe pain medication for CDCR inmates. Finally, Defendant Smith argues that Plaintiff was provided with pain medication following his surgery and continued to be prescribed pain medication even after it was determined that narcotic medication was no longer medically necessary.

Plaintiff counters that Defendant Smith was deliberately indifferent when he repeated lied to Plaintiff about having repaired his rotator cuff and that Defendant Smith was deliberately indifferent by refusing to effectively treat Plaintiff's severe chronic pain during the second post-operative appointment.

Defendant Smith replies that there are no genuine issues of material fact to preclude summary judgment in this action. Plaintiff cannot establish that Defendant Smith was deliberately indifferent by any alleged misrepresentation that his rotator cuff had been repaired. There is no evidence that Defendant Smith acted with the requisite state of mind or that Plaintiff suffered any harm from the alleged misrepresentation. Further, Plaintiff has not challenged the fact that Defendant Smith was a contract physician with limited authority and could only provide prescription recommendations to Plaintiff's medical providers.

2.    Analysis

Plaintiff alleges that Defendant Smith was deliberately indifferent to his serious medical needs by misinforming him that that his rotator cuff had been repaired and by failing to prescribe pain medication on October 11, 2013.

In order to prevail on his deliberate indifference claim, Plaintiff must prove that the defendant "knows of and disregards an excessive risk to [his] health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," Simmons, 609 F.3d at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and Plaintiff must show that the defendant acted with the requisite state of mind which entails more than ordinary lack of due care, Snow, 681 F.3d at 985; Wilhelm, 680 F.3d at 1122.

a.    **Misrepresentation Regarding Rotator Cuff Repair**

Defendant Smith examined Plaintiff on March 1, 2013, after he reinjured his rotator cuff following a surgery to repair it on December 13, 2012. (Decl. of David G. Smith, M.D. ("Smith

Decl.") ¶ 3, ECF No. 105-3; ECF No. 105-3 at p. 8.[5]) Defendant Smith noted Plaintiff's recent history of rotator cuff repair and his subsequent complaints of pain and weakness and on examination found limited range of motion and weakness. (Smith Decl. ¶ 3; ECF No. 105-3 at p. 8.) Defendant Smith recommended an MRI which was performed and Plaintiff returned on June 5, 2013, for another consultation. (Smith Decl. ¶¶ 3, 4; ECF No. 105-3 at pp. 8, 11.) Defendant Smith reviewed the results of the MRI which showed that Plaintiff had re-ruptured his right rotator cuff and recommended surgery to re-repair the rotator cuff. (Smith Decl. ¶ 4; ECF No. 105-3 at 11.)

The surgery was approved and Defendant Smith performed surgery on July 11, 2013. (Smith Decl. ¶ 7; ECF No. 105-3 at pp. 13-21.) Defendant Smith first performed an arthroscopic examination of Plaintiff's shoulder and saw that Plaintiff's rotator cuff rupture was massive in size. (Smith Decl. ¶ 7; ECF No. 105-3 at p. 13.) Defendant Smith was able to partially mobilize the rotator cuff and felt that an attempt at repair was indicated so he made an incision. (Smith Decl. ¶ 7; ECF No. 105-3 at pp. 13-14.) When Defendant Smith attempted to mobilize the rotator cuff enough to perform the repair, he was unable to do so due to the size of the rupture. (Smith Decl. ¶ 7; ECF No. 105-3 at p. 14.) Defendant Smith documented the surgical procedure and outcome by dictating the details and findings which were later transcribed to an operative note. (Smith Decl. ¶ 7.) Defendant Smith recommended that Plaintiff's wound dressing be kept on until the follow up appointment; stitches be removed in 10 days; an arm sling; ice packs; follow up with the orthopedic surgery clinic in 2 weeks; and morphine sulfate (MS) 30 mg twice per day (BID) for 10 days. (Smith Decl. ¶ 8; ECF No. 105-3 at p. 16.)

Plaintiff had a follow-up appointment on July 26, 2013, and it is disputed whether Defendant Smith stated that he had in fact repaired Plaintiff's right rotator cuff. (FAC ¶ 18; Smith Decl. ¶ 17.) Defendant Smith recommended Plaintiff begin physical therapy to help with pain and improve shoulder mobility which Plaintiff refused. (Smith Decl. ¶ 12; ECF No. 105-3 at p. 22.)

---

[5] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

Plaintiff saw Defendant Smith again on October 11, 2013, and Plaintiff was still complaining of pain in his right rotator cuff. (Smith Decl. ¶ 13; ECF No. 105-3 at p. 24.) Again it is disputed whether Defendant Smith told Plaintiff that his rotator cuff had been repaired. (FAC ¶ 29; Smith Decl. ¶ 13.) However, the Court notes that Defendant Smith's notes from this date state "I told him that we already did the repair of the rotator cuff but he has not had any of the therapy which I recommended." (ECF No. 105-3 at p. 24.) Defendant Smith again recommended that Plaintiff start physical therapy which Plaintiff refused. (Smith Decl. ¶ 13; ECF No. 105-3 at p. 24.) Plaintiff indicated that he did not want to have any further follow-up by Defendant Smith and Defendant Smith did not see Plaintiff again. (Smith Decl. ¶ 13; ECF No. 105-3 at p. 24.)

The operative report from July 11, 2013 states "attempted re-repair of rotator cuff with inabilities to repair due to massive cuff tear." (ECF No. 105-3 at p. 13.) Defendant Smith's note from Plaintiff's July 26, 2013 surgical follow-up states that Plaintiff was "status post re-repair of a rotator cuff" but should have stated "status post *attempted* re-repair of a rotator cuff." (Smith Decl. at ¶ 16 (emphasis in original).) Defendant Smith states it appears that his vocal statements were not properly dictated from the July 26, 2013 post-operative visit. (Smith Decl. at ¶ 15.)

Defendant Smith has meet his burden of setting forth evidence to support his claim that he did not purposefully misinform Plaintiff of the results of the rotator cuff surgery and that there are no genuine issues of material fact to preclude summary judgment on this claim. The burden then shifts to Plaintiff to demonstrate that a genuine issue of material fact exists.

To show deliberate indifference, Plaintiff must demonstrate that Defendant Smith was aware that "a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Plaintiff alleges that Defendant Smith informing him that his rotator cuff was repaired when it was not caused him severe emotional distress. However, Plaintiff has submitted no evidence to show that, even if Defendant Smith made a misstatement regarding the rotator cuff repair, it would have placed Plaintiff at a substantial risk of harm.

Following the surgery, Defendant Smith recommended that Plaintiff's wound dressing be kept on until the follow up appointment; stitches be removed in 10 days; an arm sling; ice packs;

1  follow up with the orthopedic surgery clinic in 2 weeks; and morphine sulfate (MS) 30 mg twice

2  per day (BID) for 10 days.  (Smith Decl. ¶ 8; ECF No. 105-3 at p. 16.)

3      At his follow-up appointments, Defendant Smith recommended physical therapy to help

4  with shoulder pain and improve mobility.   (Smith Decl. ¶ 12; ECF No. 105-3 at p. 22.)

5  Defendant Smith is a board certified orthopedic surgeon who earned his medical degree from

6  University of California, Davis in 1976 and has been licensed to practice medicine continuously

7  since 1978.  (Smith Decl. ¶ 1.)  Plaintiff objects to this statement on the basis that Defendant

8  Smith's credentials and experience are not at issue in this action.  The Federal Rules of Evidence

9  provide that "[a] witness who is qualified as an expert by knowledge, skill, experience, training,

10  or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific,

11  technical, or other specialized knowledge will help the trier of fact to understand the evidence or

12  to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the

13  testimony is the product of reliable principles and methods; and (d) the expert has reliably

14  applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  Defendant

15  Smith's credentials are relevant as to whether he may proffer an expert opinion in this action.

16  Plaintiff's objection is overruled.

17      Defendant Smith is qualified to offer a medical opinion in this matter and opines that

18  although Plaintiff's rotator cuff was not repairable physical therapy was appropriate for Plaintiff

19  to improve his shoulder mobility and pain control.   (Smith Decl. ¶ 18.)   Plaintiff has not

20  presented evidence that he would have suffered any harm based on Defendant Smith erroneously

21  informing him that his rotator cuff had been repaired.

22      To prevail on his deliberate indifference claim, Plaintiff must show that Defendant Smith

23  acted with the requisite state of mind which entails more than ordinary lack of due care.  Snow,

24  681 F.3d at 985; Wilhelm, 680 F.3d at 1122.  Here, there are no facts presented by which a

25  reasonable jury could find that Defendant Smith made statements regarding the rotator cuff

26  repair with the requisite state of mind for deliberate indifference.

27      Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of

28  action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v.

Gamble, 429 U.S. 97, 105-106 (1976)). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; Snow, 681 F.3d at 987-88; Wilhelm, 680 F.3d at 1122 ("The deliberate indifference doctrine is limited in scope."). Although the operative report indicates that there was an attempted re-repair of the rotator cuff (ECF No. 105-3 at p. 13), subsequent records state that there was a repair (id. at pp. 22, 24). Whether this was due to Defendant Smith's misstatement in dictating his notes or a mistake in transcribing, this would not rise to the level of deliberate indifference. Even if Defendant Smith failed to read the surgery notes and misinformed Plaintiff or failed to inform Plaintiff of the results of the surgery there is no evidence that would suggest more than an ordinary lack of due care which is insufficient to establish deliberate indifference. Snow, 681 F.3d at 985.

Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). It is only when a defendant's acts or omissions are sufficiently harmful to evidence deliberate indifference to serious medical needs that 'evolving standards of decency' are offended in violation of the Eighth Amendment." McGuckin, 974 F.2d at 1059.

Here, it is undisputed that Plaintiff's rotator cuff injury was not repairable. (ECF No. 105-3 at p. 14.) Although Plaintiff contends that Defendant Smith told him that his rotator cuff had been repaired, Plaintiff has not presented any evidence that he was denied any medical care or that his medical care was interfered with due to Defendant Smith's alleged misstatement. Therefore, even if Defendant Smith misinformed Plaintiff that his rotator cuff had been repaired, the statement itself is insufficient for a reasonable trier of fact to find that Defendant Smith was deliberately indifferent to Plaintiff's serious medical need.

The Court finds that Defendant Smith is entitled to summary judgment on Plaintiff's claim that Defendant Smith was deliberately indifferent by misinforming Plaintiff that his rotator cuff had been repaired.

/ / /

### b. Denial of Pain Medication on October 11, 2013

Plaintiff also contends that Defendant Smith was deliberately indifferent by refusing to prescribe pain medication at his follow-up appointment on October 11, 2013. Following the July 2013 surgery, Defendant Ulit prescribed Plaintiff morphine. (February 2, 2016 Decl. of Dr. Ulit ("Ulit Decl.") ¶ 8, ECF No. 105-4.) Plaintiff's prescriptions were changed by Defendant Ulit on October 7, 2013, who prescribed a high dose of non-narcotic pain medication for pain management. (FAC ¶ 27; Ulit Decl. ¶ 9.) Plaintiff was prescribed 800 milligrams of Ibuprofen to be taken three times per day. (Ulit Decl. at ¶ 13.) On October 11, 2013, Plaintiff saw Defendant Smith for a follow-up appointment. (FAC ¶ 28; Smith Decl. at ¶ 13; ECF No. 105-3 at p. 24.) Plaintiff told Defendant Smith that he was continuing to experience pain. (Smith Decl. at ¶ 13; ECF No. 105-3 at p. 24.) Defendant Smith again recommended that Plaintiff begin physical therapy. (Smith Decl. at ¶ 13; ECF No. 105-3 at p. 24.) Defendant Smith also recommended Plaintiff have a "no work" chrono for two months. (Smith Decl. at ¶ 13; ECF No. 105-3 at p. 25.) Plaintiff told Defendant Smith that Defendant Ulit had wrongly stopped his medication and asked Defendant Smith to reinstate his pain medication. (FAC ¶ 29.) Defendant Smith did not prescribe pain medication. (FAC ¶ 29.)

As a contract orthopedic specialist, when Defendant Smith prepared physician's orders or chronos for CDCR inmate patients with recommended medications, treatment, or accommodations, Defendant Smith did not have authority to order the CDCR medical providers to follow his recommendations. (Smith Decl. at ¶ 10.) Only the CDCR medical providers had authority to decide which medical treatment would be provided to CDCR inmate patients. (Smith Decl. at ¶ 10.) Defendant Ulit, as Plaintiff's primary care physician, was prescribing pain medication following the July 11, 2013 shoulder surgery. (Ulit Decl. at ¶ 8.)

On October 14, 2013, Plaintiff was seen by Defendant Moon and requested that his morphine prescription be refilled. (February 1, 2016 Decl. of Dr. Moon ("Moon Decl.") at ¶ 2, ECF No. 105-5; ECF No. 105-5 at p. 6.) Defendant Moon noted that Plaintiff had prior cheeking incidents and informed Plaintiff that he was not a candidate for narcotic medication and his request would be presented to the Pain Management Committee. (Moon Decl. at ¶ 3; ECF No.

105-5 at 6.)  Plaintiff continued to be denied narcotic pain medication.  (Moon Decl. at ¶¶ 6, ECF No. 50 at p. 72.)

Defendant Smith has met his burden of setting forth evidence to demonstrate that he was not deliberately indifferent by failing to reinstate Plaintiff's prescription for narcotic pain medication.  The burden therefore shifts to Plaintiff to demonstrate that a genuine issue of material fact exists to preclude entry of summary judgment.

The evidence demonstrates that Defendant Smith was not deliberately indifferent by failing to prescribe a narcotic pain medication for Plaintiff on October 11, 2013.  When resolving a claim under the Eighth Amendment against individual defendants, causation must be resolved via "a very individualized approach which accounts for the duties, discretion, and means of each defendant."  Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988) citing with approval Williams v. Bennett, 689 F.2d 1370, 1384 (11th Cir. 1982) ("There can be no duty, the breach of which is actionable, to do that which is beyond the power, authority, or means of the charged party.  One may be callously indifferent to the fate of prisoners and yet not be liable for their injuries.  Those whose callous indifference results in liability are those under a duty -- possessed of authority and means -- to prevent the injury.")  Defendant Smith as the contracting orthopedic specialist, did not have the authority to order the CDCR physicians to follow his recommendations.  (Smith Decl. at ¶ 10.)  While Defendant Smith could recommend a certain medication, he could not prescribe pain medication for Plaintiff.

Further, Plaintiff was receiving treatment by the CDCR physicians, specifically by Defendant Ulit on October 11, 2017.  (Ulit Decl. at ¶¶ 8, 13.)  Defendant Smith was aware that Plaintiff was being prescribed pain medication, albeit not the medication Plaintiff preferred.  "A difference of opinion between a physician and the prisoner—or between medical professionals— concerning what medical care is appropriate does not amount to deliberate indifference."  Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, a plaintiff is required to show that the course of treatment selected was "medically unacceptable under the circumstances" and that the defendant "chose this course in conscious disregard of an excessive

risk to plaintiff's health." Snow, 681 F.3d at 988 (quoting Jackson, 90 F.3d at 332).

Defendant Smith opines that it was medically appropriate to taper Plaintiff off of the morphine and prescribe a non-narcotic pain medication. (Smith Decl. at ¶ 18.) Defendant Ulit also found that there was no medical necessity to continue narcotic pain medications three months after surgery. (Ulit Decl. at ¶ 11.)

Finally, on October 11, 2013, Defendant Smith recommended that Plaintiff have physical therapy and a "no work" chrono for two months. (Smith Decl. at ¶ 13.) When Plaintiff was seen by Defendant Moon on October 14, 2013, he also found that Plaintiff was not a candidate for narcotic medication and his request would be presented to the Pain Management Committee. (Moon Decl. at ¶ 3; ECF No. 105-5 at 6.) The Pain Management Committee also recommended "no opioids" for Plaintiff. (ECF No. 50 at 72.)

Plaintiff has not met his burden to present evidence demonstrating that a genuine issue of material fact exists as to his claim that Defendant Smith was deliberately indifferent by failing to recommend his pain medication be reinstated on October 11, 2013. The Court finds that Defendant Smith is entitled to summary judgment on Plaintiff's claim that Defendant Smith was deliberately indifferent by failing to prescribe pain medication on October 11, 2013.[6]

3.     Conclusion

The Court finds that Plaintiff has not presented evidence to create a genuine issue of material fact that Defendant Smith acted with deliberate indifference in violation of the Eighth Amendment, and recommends that Defendant Smith's motion for summary judgment be granted.

**B.     Defendant Ulit's Motion for Summary Judgment**

1.     Arguments of the Parties

Defendant Ulit contends that while it is unquestioned that Plaintiff wanted stronger pain medication, he provided sound medical evidence that narcotic pain medication was neither called for nor desirable after Plaintiff's prescription expired. Defendant Ulit argues that Plaintiff has failed to show that his decisions regarding pain management were medically unacceptable or

---

[6] As the Court finds that Defendant Smith is entitled to summary judgment on the Eighth Amendment claims, the Court declines to address the other issues raised in the motion for summary judgment.

were made in conscious disregard to an excessive risk to Plaintiff's health.  In fact, Defendant Ulit's decision was affirmed by both Defendant Moon and the Pain Management Committee who also denied the request for narcotic pain medication.

Plaintiff responds that Defendant Ulit prescribed narcotic pain medication in conjunction with ibuprofen for one year and was deliberately indifferent when he discontinued the narcotic pain medication despite knowing that Plaintiff still had severe chronic pain.  Plaintiff also argues that Defendant Ulit's repeated refusals to disclose the true condition of his right rotator cuff during the three separate post-surgery follow-up visits was in conscious disregard to an excessive risk of harm to Plaintiff's health.

Defendant Ulit counters that the record demonstrates that he provided a pattern of humane and medically proper treatment for Plaintiff during the fifteen months the he was Plaintiff's primary care physician.  While Plaintiff alleges that Defendant Ulit discontinued his pain medication on October 7, 2013, his prescription had expired and Defendant Ulit was no longer Plaintiff's primary care physician at that time.  Defendant Ulit argues that he prescribed Plaintiff narcotic pain medication for ten months and those narcotics tapered and stopped on October 7, 2013 without the prescription being renewed.  While Defendant Ulit did not renew the prescription, it was because he felt that narcotic pain medications were no longer medically necessary and because of Plaintiff's recent cheeking of narcotic medications.  Defendant Ulit contends that he did prescribe high doses of ibuprofen three times per day and offered physical therapy for pain relief.  Finally, Defendant Ulit contends that he was not Plaintiff's surgeon and therefore he referred Plaintiff to Defendant Smith to address Plaintiff's post-surgery concerns.

2.     Analysis

Plaintiff argues that Defendant Ulit was deliberately indifferent by failing to disclose the true condition of his right rotator cuff during his post-surgery follow-up care.  Even construing the facts in the light most favorable to Plaintiff there is no evidence presented that Defendant Ulit was aware that Plaintiff's rotator cuff had not been repaired and acted with deliberate indifference by failing to disclose this fact to Plaintiff.

It is undisputed that when Plaintiff expressed his concerns regarding his shoulder

following surgery, Defendant Ulit referred him to the surgeon, Defendant Smith. (FAC ¶ 16; February 16, 2017 Decl. of Wayne Ulit, M.D. ("Ulit Decl. 2") at ¶ 2; ECF No. 114 at pp. 20, 21.) As Plaintiff's surgery had been done by Defendant Smith, Defendant Ulit reasonably referred Plaintiff to Defendant Smith to address his concerns regarding the results of the surgery.

Plaintiff has presented no evidence that Defendant Ulit was aware that Plaintiff's rotator cuff had not been repaired or that the failure to inform Plaintiff of such results would subject Plaintiff to a substantial risk of harm. The treatment recommended by Defendant Ulit, pain medication and physical therapy, was the recommended course of treatment for Plaintiff's irreparable rotator cuff injury. (Ulit Decl. 2 at ¶¶ 5, 6; Smith Decl. ¶ 18.) Defendant Ulit is entitled to summary judgment on this claim for the same reasons that Defendant Smith is entitled to summary judgment. The failure to inform Plaintiff that his rotator cuff was not repaired does not rise to the level of deliberate indifference.

Plaintiff does not challenge the care provided by Defendant Ulit prior to October 7, 2013, but argues that Defendant Ulit was deliberately indifferent by "discontinuing" his narcotic pain medication on October 7, 2013. Plaintiff's disagreement with Defendant Ulit regarding the medical care that is appropriate does not amount to deliberate indifference. Snow, 681 F.3d at 987; Wilhelm, 680 F.3d at 1122-23. Rather, Plaintiff must show that the course of treatment selected was "medically unacceptable under the circumstances" and that Defendant Ulit "chose this course in conscious disregard of an excessive risk to plaintiff's health." Snow, 681 F.3d at 988.

Defendant Ulit provided Plaintiff with pain medication prior to and after his second rotator cuff surgery. (Ulit Decl. 2 at ¶ 7.) Defendant Ulit also referred Plaintiff to an orthopedic surgeon after Plaintiff reinjured his rotator cuff. (Ulit Decl. 2 at ¶ 2.) After the July 2013 surgery, Defendant Ulit offered Plaintiff physical therapy as that was his only option for achieving pain relief and improved range of motion. (Ulit Decl. 2 at ¶¶ 5, 6.)

Following Plaintiff's July 2013 surgery, Defendant Ulit prescribed morphine to deal with his post-surgery pain. (Ulit Decl. 2 at ¶¶ 7, 8.) However, after a period of time strong narcotic pain medication is no longer medically necessary or advisable in light of the risks attendant to

narcotics. (Ulit Decl. 2 at ¶ 8.) At the time that Plaintiff's prescription for narcotic medication expired, Defendant Ulit had prescribed a high dose of ibuprofen to be administered three times per day. (Ulit Decl. 2 at ¶ 8.) When Plaintiff's prescription for morphine expired, Defendant Ulit did not renew the prescription. (Ulit Decl. 2 at ¶¶ 8, 11.) Defendant Ulit did not renew the prescription because he found that the continued use of narcotic pain medication was no longer medically necessary three months after surgery, and because there were recent episodes in the medical record where Plaintiff was accused of cheeking his medication. (Ulit Decl. 2 at ¶ 11.)

Defendant Ulit has met his burden of presenting evidence demonstrating that the course of treatment he choose was medically acceptable under the circumstances. Therefore the burden shifts to Plaintiff to submit admissible evidence that the course of treatment chosen by Defendant Ulit was medically unacceptable and was chosen in conscious disregard of an excessive risk to Plaintiff's health.

Plaintiff argues that he was receiving morphine in conjunction with ibuprofen for one year. (ECF No. 114 at p. 12.) Review of the prescription records shows that Plaintiff's prescription for acetaminophen with codeine was stopped on May 30, 2013 and Plaintiff was prescribed 15 milligrams of morphine twice a day. (ECF No. 50 at p. 126.) Plaintiff also had a prescription for 800 mg of ibuprofen to be taken three times per day as needed. (Id.) On July 11, 2013, Defendant Ulit increased Plaintiff's morphine to 30 mg. (Id. at p. 128.) On August 13, 2013, Plaintiff's prescription for ibuprofen was renewed. (Id. at p. 130.) On September 13, 2013, Defendant Ulit prescribed 30 mg of morphine to be taken 2 times per day for 7 days and then 15 mg of morphine to be taken 2 times per day for 14 days. (Id. at p. 133.) On September 19, 2013, Defendant Ulit prescribed 15 mg of morphine to be taken twice a day for 10 days, and then one tablet to be taken once a day for one week and then the medication was to stop. (Id. at p. 134.)

While Plaintiff argues that he was receiving both morphine and ibuprofen, the record shows that Defendant Ulit was tapering Plaintiff off of the morphine and the medication was not refilled following the expiration of his prescription. Plaintiff alleges that Defendant Ulit choose a course of treatment that was medically unacceptable under the circumstances, but he has

presented no evidence that the treatment rendered was medically unacceptable.[7] Defendant Ulit has submitted evidence that after a period of time, strong narcotic pain medication is no longer medically necessary or advisable in light of the risks attendant to narcotics. (Ulit Decl. 2 at ¶ 8; see also Smith Decl. at ¶ 18 (opining that it was medically appropriate to taper Plaintiff off of morphine and prescribe a non-narcotic pain medication).) At the time that Plaintiff's morphine prescription was stopped, Plaintiff was receiving a high dose of ibuprofen to manage his pain. (Ulit Decl. 2 at ¶ 13.) Further, Plaintiff had two incidents of checking his narcotic medication in 2012 which caused Defendant Ulit to determine it was not in Plaintiff's best interest to continue receiving narcotic medication. (Ulit Decl. 2 at ¶ 10.) While Plaintiff alleges that these incidents were not recent, they are not so distance in time as to not provide a valid reason to ween Plaintiff off his narcotic pain medication.

It is undisputed that Plaintiff did not see Defendant Ulit after his prescription for morphine was discontinued as Plaintiff's last visit with Defendant Ulit was September 19, 2013. (Ulit Decl. 2 at ¶ 6.) Plaintiff has presented no evident that Defendant Ulit saw Plaintiff after the morphine was discontinued and Plaintiff began treatment with a new primary care provider  The record demonstrates that Defendant Ulit provided pain medication following Plaintiff's surgery and Plaintiff's disagreement with the course of treatment chosen by Defendant Ulit does not support a claim under the Eighth Amendment. Snow, 681 F.3d at 987. The Court finds that Defendant Ulit is entitled to summary judgment.[8]

3.   Conclusion

Plaintiff has failed to meet his burden of showing that a genuine issue of material fact exists for his claim that Defendant Ulit was deliberately indifferent to his serious medical needs. The Court recommends that Defendant Ulit's motion for summary judgment be granted.

/ / /

---

[7] Plaintiff has not presented any evidence that he has been medically trained and therefore is not qualified to proffer expert testimony under the Federal Rules of Evidence.

[8] As the Court finds that Defendant Ulit is entitled to summary judgment on the Eighth Amendment claims, the Court declines to address the other issues raised in the motion for summary judgment.

**C.** **Defendant Moon's Motion for Summary Judgment**

1. Arguments of the Parties

Defendant Moon contends that he examined Plaintiff on three occasions and found that Plaintiff was able to walk and move his right arm forward and backward normally. Based on his medical observations and training, Defendant Moon concluded that there was no medical need for Plaintiff to be prescribed narcotic pain medication, specifically morphine. Furthermore, the Pain Management Committee considered Plaintiff's records and determined that he did not have a serious medical need for morphine. Additionally, Defendant Moon states that he observed Plaintiff on the yard on numerous occasions and noted that Plaintiff did not exhibit symptoms consistent with tremendous shoulder pain which reinforced his opinion that Plaintiff did not have a need for morphine.

Plaintiff counters that Defendant Moon displayed deliberate indifference by refusing his requests for treatment on six consecutive visits despite having actual knowledge that Plaintiff had severe chronic pain. Plaintiff argues that he was not just seeking morphine but requested effective pain management.

Defendant Moon replies that Plaintiff is merely alleging a difference of opinion between him and his medical providers as to the proper treatment of his condition that is insufficient to establish deliberate indifference and the finding of the Pain Management Committee that the treatment Plaintiff sought was not medically necessary negatives any deliberate indifference on the part of Defendant Moon.

2. Analysis

Defendant Moon first saw Plaintiff on October 14, 2013, after his morphine prescription had not been renewed by Defendant Ulit. (March 9, 2017 Decl. of Dr. Moon ("Moon Decl. 2") at ¶ 2, ECF No. 112-3; ECF No. 112-3 at p. 6.) Defendant Moon reviewed the medical record and examined Plaintiff. (Moon Decl. 2 at ¶ 2; ECF No. 112-3 at p. 6.) Plaintiff's main focus and concern was having his morphine prescription refilled. (Moon Decl. 2 at ¶ 2; ECF No. 112-3 at p. 6.) Defendant Moon was unable to make any objective findings that would support Plaintiff's need for morphine. (Moon Decl. 2 at ¶ 2.) Defendant Moon also noted that Plaintiff had two

prior cheeking incidents and explained to Plaintiff that this would likely preclude him from obtaining narcotics. (Moon Decl. 2 at ¶ 2; ECF No. 112-3 at p. 6.) Defendant Moon continued Plaintiff's prescription for ibuprofen and informed Plaintiff that he would submit his request for morphine to the Pain Management Committee consistent with CDCR guidelines. (Moon Decl. 2 at ¶ 2; ECF No. 112-3 at p. 6.)

Defendant Moon saw Plaintiff again on November 4, 2013, and again reviewed his medical history and examined Plaintiff's right shoulder. (Moon Decl. 2 at ¶ 3; ECF No. 112-3 at p. 10.) Defendant Moon was unable to make any objective findings that would support Plaintiff's need for morphine. (Moon Decl. 2 at ¶ 3.) Defendant Moon continued to prescribe ibuprofen and made a referral to physical therapy. (Moon Decl. 2 at ¶ 3; ECF No. 112-3 at 10-11.)

When Defendant Moon saw Plaintiff on December 3, 2013, Plaintiff again requested morphine and refused physical examination. (Moon Decl. 2 at ¶ 4; ECF No. 112-3 at 14.) Defendant Moon explained to Plaintiff that the Pain Management Committee would be meeting in the near future and recommended that Plaintiff partake in physical therapy. (Moon Decl. 2 at ¶ 4; ECF No. 112-3 at 14.) Plaintiff refused physical therapy, and Defendant Moon continued his ibuprofen prescription. (Moon Decl. 2 at ¶ 4; ECF No. 112-3 at 14.)

Defendant Moon has met his burden of setting forth the evidence that demonstrating that the course of treatment he chose was medically acceptable under the circumstances. The burden therefore shifts to Plaintiff to submit admissible evidence demonstrating that the course of treatment chosen was medically unacceptable and was chosen in conscious disregard for an excessive risk to Plaintiff's health.

Plaintiff argues that he was not seeking morphine, but effective treatment for his severe pain. However, Plaintiff has continually alleged that he was denied reinstatement of his effective pain management and requested his pain medication be reinstated. (FAC at ¶¶ 27, 29, 31, 32, 34, 37, 41, 42, 43; ECF No. 50 at pp. 67, 69, 70, 73, 80, 88, 91, 104, 105.)

While Defendant Moon states he did not see Plaintiff after December 3, 2013, (Moon Decl. 2 at ¶ 4), Plaintiff alleges that he was seen by Defendant Moon on December 19, 2013.

There is a progress note dated December 19, 2013 that may have been signed by Defendant Moon. (ECF No. 19 at 103.) Also, it does appear that Plaintiff may have been seen on November 12, 2013, by Dr. Moon in regards to his appeal. (ECF No. 119 at 82.)

Plaintiff disagreed with the pain medication provided by Defendant Moon and wanted reinstatement of his prescription for morphine. In order to prevail on his deliberate indifferent claim against Defendant Moon, Plaintiff must show that the course of treatment selected was "medically unacceptable under the circumstances" and that the defendant "chose this course in conscious disregard of an excessive risk to plaintiff's health." <u>Snow</u>, 681 F.3d at 988 (quoting <u>Jackson</u>, 90 F.3d at 332). Plaintiff has presented no evidence to show that the course of treatment was medically unacceptable.

Despite Plaintiff's contention that Defendant Moon failed to provide any treatment for Plaintiff's pain, Defendant Moon prescribed Plaintiff with 800 mg of ibuprofen to be taken three times per day as needed and offered Plaintiff physical therapy. This is the prescribed course of treatment which Defendant Ulit and Defendant Smith found to be medically acceptable given the amount of time since Plaintiff's rotator cuff surgery. (Ulit Decl. 2 at ¶ 8; <u>see also</u> Smith Decl. at ¶ 18.) Defendant Moon did not refuse to treat Plaintiff's pain and Plaintiff has presented no evidence that the course of treatment chosen by Defendant Moon was unacceptable under the circumstances. <u>See Gonzales v. Ugwueze</u>, No. 1:11-CV-01588-LJO, 2014 WL 223506, at *9 (E.D. Cal. Jan. 21, 2014), subsequently aff'd, 594 F. App'x 448 (9th Cir. 2015) (plaintiff's opinion that he should have been provided other types of pain medication does not create a dispute of material fact to preclude summary judgment); <u>Bragg v. Schwarzenegger</u>, No. C 10-4695 RS (PR), 2013 WL 3802917, at *5 (N.D. Cal. July 19, 2013) (plaintiff's argument that he should have received more aggressive treatment does not show the physicians acted with conscious disregard to his serious medical needs); <u>Coston v. Yu</u>, No. 114CV00148AWIMJS, 2017 WL 3705116, at *5 (E.D. Cal. Aug. 28, 2017) (plaintiff's belief that he should have been prescribed different pain medication amounts to difference of opinion regarding the proper course of treatment); <u>but see Ramirez v. Haffner</u>, No. 214CV2079GEBKJNP, 2017 WL 3641741, at *26 (E.D. Cal. Aug. 24, 2017), report and recommendation adopted sub nom.

Ramirez v. Haffner, No. 214CV2079GEBKJNP, 2017 WL 4124104 (E.D. Cal. Sept. 18, 2017) (genuine dispute of fact existed where outside doctors recommended that plaintiff be prescribed morphine for pain).

Plaintiff argues that Defendant Moon decreased his ibuprofen from 800 mg to 600 mg after December 23, 2013. However, review of the record shows that while Plaintiff's medication was decreased, it was not by Defendant Moon but by Dr. Yu. (ECF No. 119 at 106.) Therefore, even if Plaintiff's medication was decreased there is no evidence that Defendant Moon was responsible or even knew that Plaintiff's medication had been decreased.

Plaintiff also alleges that Defendant Moon displayed hostility toward him during office visits. Since verbal harassment and verbal threats do not constitute a violation of the Eighth Amendment, Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996); Oltarzewski v. Ruggiero, 830 F.2d 136, 138 (9th Cir. 1987); Gaut v. Sunn, 810 F.2d 923, 925 (9th 1987), even if Defendant Moon was rude and hostile this would not rise to the level of deliberate indifference, see Acuna v. Ikegbu, No. 14-CV-03651-JCS (PR), 2014 WL 7183702, at *3 (N.D. Cal. Dec. 15, 2014) (yelling at a patient may be rude but does not show deliberate indifference).

Here, it is undisputed that Defendant Moon prescribed pain medication for Plaintiff, albeit not the pain medication that Plaintiff sought. Defendant Moon offered physical therapy which is the recommended course of treatment to reduce Plaintiff's pain, but Plaintiff refused to participate in physical therapy. Defendant Moon also referred Plaintiff's request for morphine to the Pain Management Committee in compliance with the CDCR pain management guidelines. (See ECF No. 112-3 at p. 27.) The Court finds that Plaintiff has failed to present evidence that the course of treatment provided by Defendant Moon was "medically unacceptable under the circumstances" and that Defendant Moon "chose this course in conscious disregard of an excessive risk to plaintiff's health." Snow, 681 F.3d at 988. Defendant Moon is entitled to summary judgment.[9]

---

[9] As the Court finds that Defendant Moon is entitled to summary judgment on the Eighth Amendment claims, the Court declines to address the other issues raised in the motion for summary judgment.

3.     Conclusion

The Court finds that Plaintiff has not met his burden of demonstrating that a genuine issue of material fact exists and recommends that Defendant Moon's motion for summary judgment be granted.

**D.     Defendant Wang's Motion for Summary Judgment**

1.     Arguments of the Parties

Defendant Wang states that he had no personal involvement in the Pain Management Committee's decision not to recommend opiates to Plaintiff because there is no supervisory liability under section 1983 and he only signed the notification of the Committee's decision. Defendant Wang contends that Plaintiff has failed to articulate what serious medical need he is alleged to have ignored. Defendant Wang's only involvement in Plaintiff's medical care was review of Plaintiff's appeals at the second level which sought morphine and effective medical care.[10] Defendant Wang argues that there is no evidence that the denial of morphine posed an objectively excessive risk to Plaintiff's health and given that Plaintiff was receiving pain medication and access to medical providers the inference is completely implausible.

Defendant Wang also asserts that he had no involvement in Plaintiff's medical care and there is no evidence that he was subjectively aware of a risk of harm and intentionally ignored it. Defendant Wang contends that he fulfilled his duty as the chief medical officer to review each of Plaintiff's complaints raised in the appeal and rendered appropriate, meaningful decisions based on the information he possessed.

Plaintiff counters that Defendant Wang was deliberately indifferent when he reviewed, authorized, and approved the Pain Management Committee's recommendation that Plaintiff not receive opioids and two grievances at the second level of appeal which refused Plaintiff's requests for effective treatment of his severe chronic pain.

Defendant Wang responds that Plaintiff does not address the argument that he did not interview, examine, or treat Plaintiff which is the fact at issue. Defendant Wang also argues that

---

[10] Defendant Wang also contends that the appeal sought referral to orthopedics, but Plaintiff asserts that he never sought an orthopedic referral.

the decision not to provide Plaintiff with morphine or any other narcotic medication fails as a matter of law as medical negligence or a difference in a medical opinion is insufficient to constitute deliberate indifference.

2.    Analysis

Defendant Wang was the Acting Chief Medical Executive at CSP from June 2011 through January 2015. (Defendant J. Wang's Decl. ("Wang Decl.") ¶ 2, ECF No. 125-3.) As the Acting Chief Medical Executive, Defendant Wang's duties included reviewing and signing a response to a CSP inmate's medical grievance at the second level of review where the inmate was dissatisfied with the first level response. (Wang Decl. at ¶ 4.)

Defendant Wang incorrectly argues that the fact at issue is whether he ever examined, interviewed or treated Plaintiff. Deliberate indifference is "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Defendant Wang does not have to examine, interview, or treat Plaintiff to be subjectively aware that Plaintiff has a serious medical need.

In addressing Plaintiff's appeal at the second level, Defendant Wang reviewed the medical records and could have granted Plaintiff's appeal. If upon review of the records, Defendant Wang became aware that Plaintiff had a serious medical need that was not being addressed by his medical providers and Defendant Wang had the ability to grant the request, this could be sufficient to show that Defendant Wang knew of and disregarded a substantial risk of serious harm to the plaintiff. Farmer, 511 U.S. at 847; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); see also Nelson v. California Dep't of Corr., No. C 01-1021 SI, 2003 WL 946412, at *6 (N.D. Cal. Mar. 3, 2003), aff'd, 76 F. App'x 130 (9th Cir. 2003) (to raise triable issue of fact plaintiff must show that medical appeal coordinator knew that not rushing test would result in substantial risk of medical harm), but see Peralta, 744 F.3d at 1086 (Chief Medical Officer not deliberately indifferent where he signed off on dental appeal and relied on medical opinions of staff dentists who investigated the complaints).

Plaintiff argues that Defendant Wang was deliberately indifferent when he reviewed,

authorized, and approved the Pain Committee's recommendation denying him opioids. However, "[u]nder Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (citation and internal quotation marks omitted). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Crowley, 734 F.3d at 977 (citation and internal quotation marks omitted). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Id. To prevail on his claim against Defendant Wang, Plaintiff must demonstrate that Defendant Wang personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

In the position of Acting Chief Medical Executive, Defendant Wang provided notice to Plaintiff that the Pain Management Committee had reviewed his care and recommended "no opioids." (Wang Decl. at ¶ 6; ECF No. 125-3 at p. 7.) Defendant Wang was not on the committee and did not participate in the Pain Management Committee's decision. (Wang Decl. at ¶ 6.) Plaintiff has failed to present any evidence that Defendant Wang was subjectively aware that Plaintiff had a serious medical need and failed to appropriately respond by signing the notification informing Plaintiff of the Pain Management Committee's decision.

Plaintiff also contends that Defendant Wang was deliberately indifferent by denying his appeals at the second level. While Defendant Wang did not provide any direct or hands on medical care to Plaintiff, he did review two of Plaintiff's appeals at the second level of review. (Wang Decl. at ¶ 8, 9, 11, 12, 13, 14; ECF No. 125-3 at pp. 9, 11-12.) In reviewing the appeals, Defendant Wang reviewed Plaintiff's grievances, attachments, and unit health records. (Wang Decl. at ¶¶ 8, 11.)

On October 25, 2013, Plaintiff submitted health care appeal no. 13054558. (ECF No. 128 at pp. 50-54.) Plaintiff stated that he was suffering from severe chronic pain due injuries to

35

his right shoulder and his pain medication was stopped on October 7, 2103 in the absence of any other treatment. (ECF No. 128 at p. 50.) Plaintiff sought to have his pain mediation reinstated. (ECF No. 128 at p. 50.) At the second level, Plaintiff stated that there had never been any effective communication between himself and Defendant Moon and that his pain medication was stopped on October 7, 2013 in the absence of any alternative treatment. (ECF No. 128 at p. 51.) On February 6, 2014, Plaintiff was informed that the Pain Management Committee had denied his request for opioids and his health records showed that he was currently receiving ibuprofen. (Wang Decl. at ¶ 9; ECF No. 128 at p. 52.) Plaintiff was advised that he would have a follow-up appointment with Defendant Moon on February 18, 2014, and could discuss any concerns with Defendant Moon at the appointment. (Wang Decl. at ¶ 9; ECF No. 128 at p. 52.)

Defendant Wang noted that contrary to Plaintiff's statements that he was not receiving any alternative pain treatment he was receiving ibuprofen and was to continue this medication. The Pain Management Committee had considered and denied Plaintiff's request for opioids. Plaintiff was scheduled for a follow-up appointment with Defendant Moon within two weeks. Defendant Wang was aware that Plaintiff was receiving medication for his pain, and the Pain Management Committee and Plaintiff's treating physicians had determined that opioids were not medically acceptable treatment for Plaintiff's rotator cuff injury. While Plaintiff sought to have his medication reinstated he has failed to show that the alternative treatment provided was not medically acceptable given the amount of time since Plaintiff's rotator cuff surgery or that his request for opioids was denied in conscious disregard of an excessive risk to Plaintiff's health. Snow, 681 F.3d at 988.

On November 21, 2013, Plaintiff submitted health care appeal no. 13054741. (ECF No. 128 at pp. 57-63.) Plaintiff grieved that he had an open surgery of his right rotator cuff on July 11, 2013, and had a massive rupture of the right rotator cuff that was unable to be repaired. (ECF No. 128 at pp. 57, 59.) Plaintiff stated that since his surgery he had severe chronic pain and extremely limited range of motion. (ECF No. 128 at p. 59.) Plaintiff was misinformed of the results of his surgery and Defendant Ulit stopped his pain medication on October 7, 2013, and Defendant Moon was refusing to reinstate his pain medication. (ECF No. 128 at p. 59.)

Plaintiff sought effective medical care for his torn rotator cuff. (ECF No. 128 at p. 57.)

At the second level review, Plaintiff stated there has been no effective communication between himself and Defendant Moon. (ECF No. 128 at p. 58.) Plaintiff saw a physical therapist on November 27, 2013 and has not received the offered treatment for his right shoulder. (ECF No. 128 at p. 58.) Plaintiff complained of severe chronic pain in his right shoulder and that his medication was stopped on October 7, 2013, in the absence of any alternative treatment. (ECF No. 128 at p. 58.)

Plaintiff's second appeal was partially granted on February 18, 2014, (ECF No. 128 at p. 60.) Plaintiff was refusing to see the physical therapist. (ECF No. 128 at p. 60.) Plaintiff had been seen by a physical therapist and been given exercises to do for his shoulder. (ECF No. 128 at p. 60.) No further surgery was recommended. (ECF No. 128 at p. 60.) Plaintiff was to continue doing his exercises and to receive his current pain regimen. (Wang Decl. at ¶ 13; ECF No. 128 at p. 60.) Plaintiff had a current lower bunk and waist chain chronos for his comfort and to avoid further injury to his shoulder. (Wang Decl. at ¶ 13; ECF No. 128 at p. 60.) Plaintiff's case had been discussed at the Pain Management Committee on January 14, 2014 and opioids were not recommended. (ECF No. 128 at p. 60.)

Again, Defendant Wang noted that Plaintiff was receiving pain medication for his rotator cuff injury and had been recommended to attend physical therapy which Plaintiff refused. Plaintiff had chronos in place for his comfort and to avoid further injury to his shoulder. While Plaintiff wanted his pain medication reinstated, his physicians and the Pain Management Committee had determined that opioids were not recommended, nor was further surgery recommended. Snow, 681 F.3d at 988. Plaintiff has failed to present any evidence to demonstrate that a genuine issue of material fact exists that Defendant Wang was deliberately indifferent in addressing his appeals at the second level.[11]

3.    Conclusion

Plaintiff has failed to meet his burden to demonstrate that a genuine issue of material fact

---

[11] As the Court finds that Defendant Wang is entitled to summary judgment on the Eighth Amendment claims, the Court declines to address the other issues raised in the motion for summary judgment.

exists and the Court recommends that Defendant Wang's motion for summary judgment be granted.

### VI.

### CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.   Defendant Smith's motion for summary judgment, filed March 2, 2017, be GRANTED;

2.   Defendant Ulit's motion for summary judgment, filed March 3, 2017, be GRANTED;

3.   Defendant Moon's motion for summary judgment, filed March 10, 2017, be GRANTED; and

4.   Defendant Wang's motion for summary judgment, filed April 21, 2017, be GRANTED.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within thirty (30) days of service of this recommendation, any party may file written objections to this findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __September 22, 2017__

UNITED STATES MAGISTRATE JUDGE